**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Jeannie Quinteros | ) | Case No.19-00195-SMT |
| | ) | |
| | ) | (Chapter 13) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Jeanie Quinteros | ) | |
| | ) | |
| Appellant | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| Capital Ventures | ) | |
| International, Inc. | ) | |
| Appellee. | | |

## TRANSMITTAL OF NOTICE OF APPEAL

Transmitted herewith to the Clerk of the District Court for docketing in the District Court pursuant to Fed. R. Bankr. P. 8003(d)(2) is the Notice of Appeal (Dkt. No.100) in the above-captioned bankruptcy case.

**Other comments:**

```
```

The parties to the order appealed and their respective attorneys are as follows:

| Appellant(s) | Attorney |
|---|---|
| Jeannie Quinteros | Alisha Elaine Gordon<br>Law Office of Alisha Gordon, MBA<br>1101 Connecticut Ave, NW<br>Suite 450<br>Washington, DC 20036<br><br>William C. Johnson, Jr.<br>Law Offices of William C. Johnson, Jr.<br>1310 L St. NW<br>Suite 750<br>Washington, DC 20005 |
| **Appellee(s)** | **Attorney** |
| Capital Ventures International, LLC | Gregory Christopher Mullen<br>Tydins & Rosenberg LLP<br>1 E Pratt Street<br>Suite 901<br>Baltimore, MD 21202 |

Angela D. Caesar,
Clerk of the Court

Dated: 10/7/2019

By: /s/Vamira Ragland
Deputy Clerk

**FILED**

OCT – 4 2019

Clerk, U.S. District & Bankruptc
Courts for the District of Colum

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE:       )

 JEANNIE QUINTEROS, )  Case No.:  19-00195 SMT

   Debtor.    )  Chapter 13

         )

—————————————————)

         )

Capital Ventures International, Inc. )

   Movant,    )

         )

v.         )

         )

Jeannie Quinteros, et. al.,  )

   Respondent/Debtor, )

—————————————————)

### NOTICE OF APPEAL

  **COMES NOW** the debtor Jeannie Quinteros, pro-se, pursuant to Federal Rules of

Bankruptcy Procedure, Rule 8001, et. seq., hereby files this Notice of Appeal. The

appellant hereby appeals under 28 U.S.C. § 158(a)(1) from the Order and all related

orders and memorandum opinions entered October 2, 2019, Dkt. No. 87 and related order

entered October 2, 2019, Dkt. No. 89 of the Bankruptcy Judge S. M. Teel. RELIEF IS

SOUGHT FROM A UNITED STATES DISTRICT COURT JUDGE.

  The names of all parties to the order appealed from are: Jeannie Quinteros

(Debtor) and Capital Ventures International, LLC., alleged Creditor.

  The names, addresses and telephone numbers of the respective attorneys for the

parties are as follows:

Debtor:                         Jeannie Quinteros
                                814 Tewkesbury Pl NW
                                Washington, DC 20012

Alleged Creditor:               Capital Ventures International, LLC
                                Gregory Mullen, Esq.
                                Tydings & Rosenberg LLP
                                One East Pratt Street, Suite 901
                                Baltimore, Maryland 21202


October 4, 2019                 _____
                                Jeannie Quinteros
                                814 Tewkesbury Pl NW
                                Washington, DC 20012
                                (305) 409-6254



**I HEREBY CERTIFY** that on this day of October 4, 2019 a copy of the
foregoing was sent via first class mail, postage pre-paid to the following:

Office of the U.S. Trustee
1725 Duke Street
Suite 630
Alexandria, VA 22314

Gregory Mullen, Esq.
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202


October 4, 2019                 _____
                                Jeannie Quinteros


2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE:                )
     JEANNIE QUINTEROS,       )     Case No.:     19-00195 SMT
                                  )     Chapter 13
        Debtor.               )
                                    )
_____ )
                                    )
Capital Ventures International, Inc.    )
         Movant,              )
                                    )
v.                                           )
                                    )
Jeannie Quinteros, et. al.,          )
         Respondent/Debtor,     )
_____ )

## STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

**COMES NOW** the debtor Jeannie Quinteros, pro-se, pursuant to Federal Rules of Bankruptcy Procedures, Rule 8009, hereby files this Statement of Issues to be Presented on Appeal.

The debtor reserves the right to include additional issues which may be discovered prior to submission of the Appellant's Brief. The issues to be presented on appeals are as follows:

I.      **Did the Bankruptcy Court commit substantial prejudice and reversible error when it accepted a loan modification procured by fraud as basis to grant standing to an alleged Creditor Capital Ventures International, LLC's that is not a real party in interest in Debtors real property.**

II.     **Did the Bankruptcy Court Err when it granted the alleged Creditor Capital Ventures International, LLC's Motion for Relief of Automatic Stay when it determined that debtor's entry of a**

1

settlement agreement, that was procured by fraud, relieved the
alleged creditor from complying with Florida Law regarding the
entitlement and right to enforce a lost note which was never in
possession of Capital Ventures International, LLC or its privies.

III.    Did the Bankruptcy Court Err when it denied the Debtor's Motion
to Strike the Motion for Relief from Automatic Stay after finding
the creditor failed to timely file a Proof of Claim.

October 4, 2019

_____
Jeannie Quinteros
814 Tewkesbury Pl NW
Washington, DC 20012
(305) 409-6254

**I HEREBY CERTIFY** that on this day of October 4, 2019 a copy of the
foregoing was sent via first class mail, postage pre-paid to the following:

Office of the U.S. Trustee
1725 Duke Street
Suite 630
Alexandria, VA 22314

Gregory Mullen, Esq.
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202

October 4, 2019

_____
Jeannie Quinteros

3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE:                         )

     JEANNIE QUINTEROS,     )     Case No.:    19-00195 SMT

         Debtor.           )     Chapter 13

                         )

_____)

                         )

Capital Ventures International, Inc.   )

        Movant,           )

                         )

v.                          )

                         )

Jeannie Quinteros, et. al.,      )

        Respondent/Debtor,   )

_____)

### DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

**COMES NOW** the debtor Jeannie Quinteros, pro-se pursuant to Federal Rules of Bankruptcy Procedures, Rule 8006, hereby files this Designation of Items to be included in the Record of Appeal. _Debtor reserves the right to include additional records._

The items to be included in the Record on Appeal are a follows:

| | | | |
|---|---|---|---|
| 1. | 07/19/2019 | Motion for Relief | Dkt. #54 |
| 2. | 07/29/2019 | Opposition to Motion for Relief | Dkt. #63 |
| 3. | 08/08/2019 | Support Document | Dkt. #66 |
| 4. | 09/08/2019 | Motion to Strike | Dkt. #74 |
| 5. | 10/02/2019 | Court Order | Dkt. #87 |
| 6. | 10/02/2019 | Court Order | Dkt. #89 |

October 4, 2019

Jeannie Quinteros
814 Tewkesbury Pl NW
Washington, DC 20012
(305) 409-6254

1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this day of October 4, 2019 a copy of the foregoing was sent via first class mail, postage pre-paid to the following:

Office of the U.S. Trustee
1725 Duke Street
Suite 630
Alexandria, VA 22314

Gregory Mullen, Esq.
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202

October 4, 2019

_____
Jeannie Quinteros

## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JEANNIE QUINTEROS, | Case No. 19-00195-SMT |
| Debtor. | Chapter 13 |
| | |

CAPITAL VENTURES
INTERNATIONAL, LLC

        Movant,

v.

JEANNIE QUINTEROS,

        Respondent/Debtor,

RONNIE QUINTEROS,

        Respondent/Co-Debtor,

And

NANCY SPENCE GRIGSBY, Trustee

## MOTION FOR RELIEF FROM AUTOMATIC STAY AND CO-DEBTOR STAY
## AS TO REAL PROPERTY AT 1596 SALERNO CIRCLE, WESTON, FL 33327

    Capital Ventures International, LLC, a Delaware limited liability company ("Movant"),

hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay and

pursuant to 11 U.S.C. §1301(c), for relief from the Co-Debtor stay, with respect to certain non-

homestead real property of the Debtor having an address of 1596 Salerno Circle, Weston, FL

33327 (the "Property"), for all purposes allowed by the Note (defined below), the Mortgage

(defined below), and applicable state law, including but not limited to the right to foreclose.  In

further support of this Motion, Movant respectfully states:

1

#3321559v.1

1.      On or about March 27, 2019 (the "Petition Date"), Jeannie Quinteros (the "Debtor") filed

a petition under Chapter 13 of the United States Bankruptcy Code.

2.      On or about November 2, 2006, the Debtor and Ronnie Quinteros ("Co-Debtor")

executed and delivered or is otherwise obligated with respect to that certain promissory note in

the original principal amount of $328,000.00 (the "Note").  On or about January 8, 2015, the

Debtor and Movant entered into a Loan Modification Agreement.  The Loan Modification

agreement consensually modified the terms of the Note.  Copies of the Affidavit of Lost Note,

the Note, the Allonge to the Note, and the Loan Modification are attached hereto as **Exhibit A**.

3.      Pursuant to that certain Mortgage (the "Mortgage"), all obligations (collectively, the

"Obligations") of the Debtor and Co-Debtor under and with respect to the Note and Mortgage

are secured by the Property.  The lien created by the Mortgage was perfected by recording of the

Mortgage in the Public Records of Broward County, Florida on or about November 14, 2006,

Instrument #106594614, Book 43110 at Page 1071. Copies of the recorded Mortgage and all

Assignments of Mortgage are attached hereto as **Exhibit B**.

4.      As of June 24, 2019, the outstanding amount of the Obligations due to the Movant, less

any partial payments or suspense balance is:

| | |
|---|---|
| Principal Balance (as of 03/29/2019) | $327,611.79 |
| Interest Accrued 04/18/2015 – 09/12/2017 | $ 41,420.45 |
| Interest Accrued 09/13/2017 – 05/07/2019 | $ 28,666.00 |
| Late Charges Accrued 04/18/2015 – 09/12/2017 | $ 2,535.45 |
| Late Charges Accrued 09/13/2017 – 05/07/2019 | $ 1,811.20 |
| Attorneys' fees incurred | $ 34,067.00 |
| Costs (filing fees, title search, process, etc.) | $ 3,239.98 |
| Property Taxes (2015, 2016, 2017) | $ 15,547.58 |
| Escrow Balance | ( $329.00) |
| Payoff as of 05/07/2019 | $454,570.45 |

2

5.      The Debtor was in default on the Petition Date. The Debtor owed prepetition arrears of

$155,145.72.

6.      The following chart set forth the number and amounts of contractual, post-petition due

pursuant to the terms of the Note that have been missed by the Debtor as of the Petition Date:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Post-petition Payments |
|---|---|---|---|---|
| 4 | 04/01/2019 | 07/01/2019 | $2,141.14 | $8,564.56 |

7.      In addition to the other amounts due to Movant reflected in this Motion, as of the date

hereof: in connection with seeking the relief requested in this Motion, Movant has also incurred

$720.00 in legal fees and $181.00 in costs.

8.      The estimated market value of the Property is $312,490.00. The basis for such valuation

is the Broward County Property Assessment report. A copy of the report is attached hereto as

**Exhibit C**. The Debtor's Amended Schedule C lists the value of the Property as $387,498.00.

9.      Based upon the Schedules of the Debtor and the Public Records of Broward County,

Florida, there are additional encumbrances on the Property:

| Name of Lienholder | Amount of Lien |
|---|---|
| The Villages of San Messina Maintenance Association (06/21/2019) | $ 1,783.02 |
| CitiMortgage (Home Equity Line of Credit) | $61,460.00 |
| Pompano Automotive Associates, LLC (judgment lien) | $ 3,885.00 |

10.     Based upon the Schedules of the Debtor, the Public Records of Broward County, Florida,

and the amount of the Obligations described herein, the aggregate amount of the encumbrances

on the Property is $521,698.47.

3

#3321559v.1

11.      Upon information and belief, the Property may by titled in the name of the Debtor and

Co-Debtor.  The Debtor and Co-Debtor have since divorced, and on or about January 29, 2009, a

Final Judgment of Dissolution of Marriage was entered pursuant to a divorce petition filed by the

Co-Debtor.  The Final Judgment of Dissolution of Marriage was recorded in the Public Records

for Miami-Dade County on or about January 30, 2009 at Instrument #20090069906, Book

26735, Page 4129.  A copy of the recorded Final Judgment of Dissolution of Marriage is

attached hereto as **Exhibit D**.  The Movant seeks termination of the Co-Debtor stay to the extent

Co-Debtor has any interest in the Property.

12.      Cause exists for relief from the automatic stay for the following reasons:

        a.      Movant's interest in the non-homestead Property is not adequately protected;

        b.      The Debtor's Amended Chapter 13 Plan fails to treat the secured claim of

Movant;

        c.      The Debtor has failed to make required post-petition payments under the Note and

Mortgage;

        d.      Pursuant to 11 U.S.C. §362(d)(2)(A), the Debtor has not equity in the non-

homestead Property; and

        e.      Pursuant to §362 (d)(2)(B), the non-homestead Property is not necessary for an

effective reorganization.

        WHEREFORE, Capital Ventures International, LLC, prays that this Court issue an Order

terminating or modifying the automatic stay and granting the following:

1.      Relief from the stay for all purposes allowed by the Note, the Mortgage, and

applicable state law, including but not limited to allowing Movant (and any successors or

4

#3321559v.1

assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

    2.    Terminating the Co-Debtor Stay under §1301, to the extent the Co-Debtor has any interest in the Property.

    3.    That the Order be binding and effective despite any conversation of this bankruptcy case to a case under any other chapter of Title 11 of the United States Bankruptcy Code.

    4.    For such other relief as the Court deems just and proper.

Date: July 19, 2019               Respectfully Submitted,

                                              */s/ Gregory C. Mullen*
                                    Gregory Mullen, Esq. Bar No. MD0020
                                    Tydings & Rosenberg LLP
                                    One East Pratt Street, Suite 901
                                    Baltimore, Maryland 21202
                                    gmullen@tydingslaw.com
                                    Phone: (410) 752-9700, Fax: (410) 727-5460

                                    *Attorneys for Movant*

#3321559v.1

## CERTIFICATE OF SERVICE

I certify that on July 19, 2019, the following person(s) were served with a copy of the

foregoing motion, exhibits, and proposed order by first class mail, postage prepaid:

Nancy Spencer Grigsby
185 Admiral Cochrane Dr., Suite 240
Annapolis, MD 21401
*Chapter 13 Trustee*

Alisha Elaine Gordon
Law Office of Alisha Gordon, MBA
1101 Connecticut Ave NW
Suite 450
Washington, DC 20036
*Attorney for the Debtor*

Ronnie Quinteros
1596 Salerno Circle
Weston, FL 33327
*Co-Debtor*

Jeannie Quinteros
814 Tewkesbury Pl, NW
Washington, DC 20012
*Debtor*

_/s/ Gregory C. Mullen_
Gregory Mullen

6

#3321559v.1

STATE OF FLORIDA                          §
                                          §
COUNTY OF BROWARD                         §

### AFFIDAVIT OF LOST NOTE

I, <u>RAFAELA LEYVA</u>, the undersigned, being duly sworn, state as follows:

I am an employee of Kahane & Associates, P.A., attorneys for Plaintiff.

1.  NATIONAL HOME INVESTORS, LLC is the party seeking to enforce the note described below.

2.  I have access to certain of Kahane & Associates, P.A.'s business records, concerning the subject loan. These records are maintained by Kahane & Associates, P.A. in the ordinary course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge. It is the regular practice to keep such records in the ordinary course of a regularly conducted business activity. I make this affidavit based upon my review of those records.

3.  A note executed by RONNIE QUINTEROS on November 2, 2006, in the original principal amount of $328,000 was secured by a mortgage dated November 2, 2006, recorded in the Official Records Book 43110, at Page 1071, of the Public Records of BROWARD County, Florida.

4.  ACQURA LOAN SERVICES delivered the original Promissory Note to the offices of Kahane & Associates, P.A. The records of Kahane & Associates, P.A. indicate receipt of the Promissory Note on May 9, 2011.

5.  Kahane & Associates, P.A.'s regular business practice is to store original notes secured by mortgages in collateral files in a secure location within the firm. After a thorough and diligent manual search of the original collateral file pertaining to the subject loan, the original note was not located. The original note is not presently in the custody, possession and control of the owner, or any agent of the owner. Kahane & Associates, P.A. has undertaken the following steps to ascertain the current whereabouts of the subject note, including:

    a.) Confirmed with the Client that the Original promissory note is not in their possession;
    b.) Completed a search of the secure locations within the firm where all original documents are stored including file rooms, cabinets and desks;

File No.: 10-15630 NHI
V2.20140128

Exhibit A

    c.) Searched the facilities of Kahane & Associates, P.A. including file rooms, cabinets and desks;

    d.) Made inquiry to any firm employees who might have had contact with the file;

    e.) Made inquiry of employees charged with custodial responsibilities as to the current or potential whereabouts of the Note; and

    f.) Reviewed existing internal notes to ascertain whether alternative dispositions of the note have been made.

6.    To the best of affiant's knowledge and belief, the business records described above reflect that the note was in possession of Kahane & Associates, P.A. at the time it was lost or destroyed.

7.    The loss of possession is not the result of the original note being canceled or transferred to another party.

8.    A copy of the original note and Endorsement is attached hereto as Exhibit "A." The Note is made payable to Citimortgage, Inc. who endorsed the Note in blank.

9.    I declare under penalty of perjury that the foregoing facts are true and correct based on my personal review of Kahane & Associates, P.A.'s business records.

Kahane & Associates, P.A.

By: _____
Name: RAFAELA LEYVA
Title: Foreclosure Administration Manager
Date: _____10/6/14_____

STATE OF FLORIDA
COUNTY OF BROWARD

Subscribed and sworn to before me this _6th_ day of _October_, 2014, by _Rafaela Leyva_ personally known _X_ or produced identification _____ Type of identification produced: _____.

_Susan Marie Sabra_ Notary Public

SUSAN MARIE SABRA
MY COMMISSION # EE 207226
EXPIRES: August 14, 2016
Bonded Thru Notary Public Underwriters

File No.: 10-15630 NHI
V2.20140128

# InterestFirst<sup>SM</sup> ADJUSTABLE RATE NOTE

**(One-Year LIBOR Index (As Published In *The Wall Street Journal*)-Rate Caps)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| November 2, 2006 | Hollywood | Florida |
|---|---|---|
| [Date] | [City] | [State] |

**1596 Salerno Cir, Weston, FL  33327-1903**
[Property Address]

### 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 328,000.00                      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is CitiMortgage, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of                      6.375  %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.   PAYMENTS

(A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on  January 1, 2007                      . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on December 1, 2036                      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1000 Technology Drive, O' Fallon, MO  63368-2240

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,742.50                      before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

002003930671
MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - ONE-YEAR LIBOR INDEX - Single Family - Fannie Mae Uniform Instrument
Amended for Florida

VMP®-173N(FL) (0307)            Form 3632  7/03
VMP Mortgage Solutions (800)521-7291

Page 1 of 5            Initials: ___

CitiMortgage 3.2.5.07 V2

Exhibit "A"

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of  December, 2009
, and the adjustable interest rate I will pay may change on that day every 12th month thereafter.
The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two & 25/100
percentage points (                    2.250  %) to the Current Index. The Note Holder will
then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than                    8.375  % or less
than                    4.375 %. Thereafter, my adjustable interest rate will never be increased or decreased on any
single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than                    12.375%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period

002003930671

Form 3532
Initials:

when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

### 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

002003930671

VMP®-173N(FL) (0307)                Page 3 of 5                CitiMortgage 3.2.5.07 V2

Form 3533   7/03

Initials

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

002003930671

-173N(FL) (0307)

CitiMortgage 3.2.5.07 V2

Form 3572   1/03
Initials

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
Tilda Auerbach-Whitley

_____
monica Ozcayoin

_____ (Seal)
Ronnie Quinteros                         -Borrower

*(Sign Original Only)*

Pay to the order of

_____
without recourse on us CitiMortgage, Inc

Janet L. Sims, Senior Vice President
CitiMortgage, Inc.

002003930671

VMP-173N(FL) (0307)          Page 5 of 5          CitiMortgage 3.2.5.07 V2          Form 3532 7/03

Borrower: RONNIE QUINTEROS AND JEANNIE QUINTEROS HUSBAND AND WIFE

Property Address: 1596 Salerno CIR, Weston, Florida  33327

Original Loan Amount: $328,000.00

**340982**

### NOTE ALLONGE

For the purpose of endorsement of the attached Note, this Allonge is affixed and becomes a permanent part of
said Note.

Pay to the order of:
**National Home Investors, LLC, without recourse**

**Castle Peak 2010-1 Loan Trust by Castle Peak Capital Advisors,
LLC in its capacity as Manager**

By: _____

**Name:   Steve Allison**

**Title:    Partner**

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement (this "Agreement") is made and entered into as of January 8th, 2015, by and between Jeannie Quinteros ("Consumer") and Capital Ventures International, LLC ("Lender"), with reference to the following facts and circumstances:

## RECITALS

A. Lender or its predecessor in interest made a loan (the "Loan") to Consumer in the original principal amount of Three Hundred Twenty-Eight Thousand Dollars and 00/100 ($328,000.00) evidenced by that certain "Promissory Note"/Adjustable Rate Note (the "Note") and other related loan agreements and documents (collectively, the "Loan Documents") dated November 2, 2006. The Note is secured by real and personal property collateral including, without limitation, a Mortgage (the "Mortgage") recorded November 14, 2006, as Instrument # 106594614 in county records of Broward County, State of Florida, encumbering certain real property located at 1596 Salerno Circle, Weston, Florida 33327-1903 (the "Property") and improvements thereto (if any).

B. The current Unpaid Principal Balance (UPB) of the Note is $327,988.00 with interest thereon at a rate of 6.375% [Adjustable Rate] from January 1, 2007. The current maturity date of the Note is December 1, 2036. The total "Arrears Balance" is: $72,461.85 consisting of the following: Current but unpaid interest on the Note is $65,405.13 ("Unpaid Interest"); Current unpaid/accrued late charges total $7,056.72 ("Accrued/Unpaid Late Charges"), plus Unpaid Loan Charges total $0.00; Total Arrears amounts are good through 02/01/2015; Consumer is in default of the Note and Loan Documents for failure to pay the May 1, 2008 through January 1, 2015 installments plus all accrued late charges, etc.

C. Consumer has requested that Lender agree to modify the Note as the same may be modified hereby. Lender is willing to do so on the terms set forth herein. The Loan Documents, as modified, amended or supplemented by this Agreement, shall remain in full force and effect.

WHEREFORE, IN CONSIDERATION OF THE FOREGOING AND THE MUTUAL CONDITIONS AND AGREEMENTS CONTAINED HEREIN, CONSUMER AND LENDER AGREE AS FOLLOWS:

1. **Modification Fee.** In partial consideration of Lender entering into this Agreement, Lender hereby agrees to waive the Modification Fee in the amount of $645.00.

2. **Modification of Loan.** Upon receipt of this fully executed agreement and the Funds outlined below, the lender agrees to cancel the active foreclosure and modify the loan. Lender agrees to bring the loan contractually current to February 1, 2015 and adding the unpaid "Arrears Balance" of $72,461.85 to the Unpaid Principal Balance. As of February 1, 2015, the amount payable under the Note and Security Instrument ("the Unpaid Principal Balance") shall be $327,988.00 consisting of amount(s) loaned to Consumer by Lender, plus capitalized Interest and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been advanced/accrued for work completed. Consumer promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 5.250% [Fixed] through the Maturity Date. The Loan terms shall be extended for a term of 30 years, with a new "Maturity Date" of January 1, 2045.

   On January 15, 2015, Consumer promises to pay to Lender a Total Lump Sum Amount of $6,548.38; which consists of the First Modification Payment of $1,811.16 and a first escrow installment payment of $329.98 & 2013 Taxes of $4,407.24. Said installment payment totaling $4,407.24 shall be deposited into Consumer's Escrow Account for the payment of 2013 Property Taxes.

Consumer(s) Initials _____

Consumer promises to begin making Monthly Installment Payments in the amount of $2,141.14, consisting of Principal and Interest (P&I) amount of $1,811.16; plus Monthly Escrow Impounds for Property Taxes in the amount of $329.98, beginning with on February 1, 2015, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The Consumer will be granted a ten (10) day grace period for the Monthly Installment and if said installment is not paid within those days, a 5% late fee will be assess to the account. Consumer agrees that in the event taxes and/or insurance increase or decrease, the escrow amounts will increase or decrease accordingly. If on January 1, 2045 (the "Maturity Date"), Consumer still owes amounts under the Note and Security Instrument, as amended by this Agreement, Consumer will pay these amounts in full at that time. **In such event of my inability to cure this default or, if in the event payments per the PLAN are not made on time, then this agreement shall be null and void and the Beneficiaries / Lenders shall proceed with foreclosure. The lender shall have no obligation to refund all or any part of such funds that I have paid to date, and the Loan shall revert back to original terms.**

3. **Time is of the Essence.** Please return the executed agreement with the agreed upon funds, five (5) days prior to the first payment due date. Please be aware if the signed agreement is not returned/received with the agreed upon funds in the time allotted, this offer is null and void.

4. **Interest Rate.** Lender agrees that the interest rate at which interest accrues on the unpaid principal balance of the Note shall which is currently 6.375% [Adjustable Rate] shall be reduced to a 5.250% [Fixed Rate] and will remain fixed through the "Maturity Date" of January 1, 2045.

5. **Payments:** Consumer shall send all payments to: **Madison Management Services, LLC, 400 Morris Avenue, Suite 222, Denville, NJ 07834**; 1-877-563-4164, Monday through Friday 9:00 am to 7:00 pm.

6. **Conditions:** Lender's agreement to forbear and modify loan shall be subject to Borrower's full and timely satisfaction of all the terms listed in this Agreement and the following conditions:
   a. Insurance and Property Taxes. At all times during the term of this agreement Borrower must pay the escrow account to maintain 1) adequate homeowner's insurance; and 2) keep all property taxes and utilities paid current.
   b. Application of Payments Upon Cancellation. If this Agreement is cancelled due to Borrower's non-compliance, the Loan will revert retroactively back to the original terms.
   c. Termination. Lender's agreement to defer, forbear and modify loan shall automatically terminate, without further notice, act or instrument, upon the occurrence of any of the following events:
      i. If a petition for relief under any federal or state bankruptcy, reorganization or insolvency statute or law is filed by or against Borrower or any guarantor of the Loan or any general partner of Borrower or of any guarantor of the Loan after the Effective Date of this agreement; or
      ii. Borrower fails to timely perform and observe any of the covenants, agreements and obligations contained in the Loan Documents, except for the obligation of the Borrower to make payments of Principal and interest; or Borrower fails to timely perform any of the other covenants, agreements and obligations set forth in this Agreement; or
      iii. Borrower fails to pay off the Note (in full) on or before 5:00 p.m. (Pacific Time) on the Maturity Date set forth in this Agreement; or
      iv. If all or any part of the Property or any interest in, is sold or transferred (or if Borrower is not a natural person and a beneficial interest in; Borrower has sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums

Consumer(s) Initials: _____

prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

7.  **Meaning of Terms.** All terms and/or phrases used in this Agreement shall have the respective meanings ascribed to them in the Loan Documents except as otherwise defined herein to the contrary.

8.  **Conditions.** Lender's obligations hereunder and Consumer's ability to enforce this Agreement are subject to and conditioned upon the following: (i) the Deed of Trust has suffered no loss of priority as against other liens or encumbrances recorded against the Property; and (ii) Consumer and any guarantor(s) of the Loan shall have executed and delivered a copy of this Agreement to Lender.

9.  **Release of Lender:** In consideration of Lender's modification of the Loan Documents under this
    Agreement, Consumer hereby waives and releases Lender from any and all actions, causes of action, claims, damages, demands, liability and loss arising from or relating to the Loan, including, but not limited to, Consumer's original loan applications and the making, funding and administration of such loan.

10. **Advice from Financial Advisor.** The parties understand that this is a legally binding agreement that may affect such party's rights. Each party represents to the other that it had the opportunity to receive financial and/or legal advice from the advisor and/or counsel of its choice regarding the meaning and legal significance of this Agreement and that it is satisfied with any advice received from such advisor and/or legal counsel.

11. **No Coercion.** Consumer acknowledges and represents to Lender that in entering into this Agreement, Consumer has not been subjected to any coercion or any other undue influence, and has exercised Consumer's own free will.

12. **Miscellaneous.**

    a.  Entire Agreement.  This Agreement represents the entire integrated agreement between the parties relating to the subject matter of this Agreement. The parties agree that there are no other agreements or understandings, written or oral, express or implied, tacit or otherwise in respect of the subject matter of this Agreement. This Agreement may be amended only in writing.

    b.  Attorneys' Fees.  If any action is threatened or commenced to interpret or enforce the terms and provisions of this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and costs of suit from the other.

    c.  Fair Meaning.  This Agreement shall be interpreted according to its fair meaning and not for or against any party hereto or the drafter of the agreement. This Agreement has been negotiated between independent counsels separately representing each party to this Agreement.

    d.  Cooperation.  The parties hereto agree to cooperate with each other to the extent necessary to affect the purposes of this Agreement, including without limitation executing additional documents, providing introductions to other persons and providing copies of books and records.

    e.  Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. This Agreement may be executed by facsimile signatures which shall be deemed original signatures for all purposes.

    f.  Successors and Assigns.  This Agreement shall bind the successors, assigns, heirs,

Case 1:19-cv-02997-ABJ Document 1 Filed 10/07/19 Page 26 of 93
Case 19-00195-SMT Doc 54-1 Filed 07/19/19 Entered 07/19/19 Desc
Exhibit A Page 12 of 12

Consumer(s) Initials:_____

g. **Sole Parties.** This Agreement is made exclusively for the benefit of and solely for the protection of the parties hereto, and no other person or persons shall have the right to enforce the provisions hereof by action or legal proceedings or otherwise.

This agreement has been solely negotiated between the consumer and lender. FCI Lender Services will not be liable for any disputes arising out of this expedited agreement. Each party will hold harmless and indemnify FCI Lender Services for the facilitation of this document.

No changes to the FCI Lender Services system will be made without the signed agreement from the consumer and the majority approval of the lender.

IN WITNESS WHEREOF, the parties have executed and entered into this Agreement as of the day and year first above written.

If you are in agreement with the Modified Terms, please sign in the space provided below of this Loan Modification Agreement in the presence of a Notary.

WITNESS the hand and Seals of the undersigned parties, this __4th__ day of __February__ 2015.

Capital Ventures International, LLC Signature/Date

By: __Rosanna Espinosa / Designated Rep.__
Print Name

**MORTGAGOR'S SIGNATURE AND NOTARY SECTION**

Jeannie Quinteros Signature/Date   1/12/15

Signed, sealed and delivered in the presence of on this: __15__ day of __January__, ~~2014~~ 2015

Notary Public

Notary Public for the County of __Miami-Dade__ State of __FL__

My Commission Expires: __10-12-15__ (Seal)

NOR FRANCIS ALMERA
Commission # EE 137846
My Commission Expires 10-12-2015
Bonded Through
American Safety Council

Consumer(s) Initials:_____



## MARTY KIAR BROWARD COUNTY PROPERTY APPRAISER

| Site Address | **1596 SALERNO CIRCLE, WESTON FL 33327** | | ID # | 4939 35 02 0870 |
|---|---|---|---|---|
| Property Owner | QUINTEROS,RONNIE & JEANNIE | | Millage | 3312 |
| Mailing Address | 1596 SALERNO CIRCLE WESTON FL 33327 | | Use | 01 |
| Abbr Legal Description | SECTORS 3 & 4 BOUNDARY PLAT 146-18 B POR PAR C DESC'D AS:COMM SW COR PAR B SAID PLAT;E 1055.81 TO POB E 44.86,NE 1.34,SE 100,WLY 44.73 NW 100 TO POB AKA: LOT 87 SINGLE FAMILY SAN MESSINA | | | |

**The just values displayed below were set in compliance with Sec. 193.011, Fla. Stat., and include a reduction for costs of sale and other adjustments required by Sec. 193.011(8).**

### Property Assessment Values

| Year | Land | Building / Improvement | Just / Market Value | Assessed / SOH Value | Tax |
|---|---|---|---|---|---|
| 2019 | $40,930 | $271,560 | $312,490 | $205,080 | |
| 2018 | $40,930 | $269,070 | $310,000 | $201,260 | $4,132.10 |
| 2017 | $40,930 | $266,570 | $307,500 | $197,130 | $3,949.80 |

### 2019 Exemptions and Taxable Values by Taxing Authority

| | County | School Board | Municipal | Independent |
|---|---|---|---|---|
| Just Value | $312,490 | $312,490 | $312,490 | $312,490 |
| Portability | 0 | 0 | 0 | 0 |
| Assessed/SOH 05 | $205,080 | $205,080 | $205,080 | $205,080 |
| Homestead 100% | $25,000 | $25,000 | $25,000 | $25,000 |
| Add. Homestead | $25,000 | 0 | $25,000 | $25,000 |
| Wid/Vet/Dis | 0 | 0 | 0 | 0 |
| Senior | 0 | 0 | 0 | 0 |
| Exempt Type | 0 | 0 | 0 | 0 |
| Taxable | $155,080 | $180,080 | $155,080 | $155,080 |

### Sales History

| Date | Type | Price | Book/Page or CIN |
|---|---|---|---|
| 11/19/2004 | WD | $303,000 | 38682 / 1877 |
| 3/22/2002 | WD | $175,000 | 33032 / 219 |
| 10/5/2000 | WD | $156,000 | 30937 / 1365 |
| 7/18/2000 | QCD | $100 | 30730 / 612 |
| 2/24/2000 | QCD | $100 | 30286 / 245 |

### Land Calculations

| Price | Factor | Type |
|---|---|---|
| $9.00 | 4,548 | SF |
| | | |
| | | |

Adj. Bldg. S.F. (Card, Sketch)   1663

Units   1

Eff./Act. Year Built: 1997/1996

### Special Assessments

| Fire | Garb | Light | Drain | Impr | Safe | Storm | Clean | Misc |
|---|---|---|---|---|---|---|---|---|
| 33 | S | | | A3 | | | | |
| R | 1 | | | A3 | | | | |
| 1 | | | | .1 | | | | |

Exhibit C

1/29/2009 3:08 PM FILED FOR RECORD
CFN: 20090069906 BOOK 26735 PAGE 4129
DATE:01/30/2009 10:39:24 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

### IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
### IN AND FOR MIAMI-DADE COUNTY, FLORIDA

IN RE: The Marriage of,                          FAMILY DIVISION:  19

RONNIE QUINTEROS,                               CASE NUMBER:      07-32562

      Petitioner/Husband,

vs.

JEANNIE QUINTEROS,

      Respondent/Wife.

_____/

### FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE

**THIS CAUSE** was heard before the Court on January 29, 2009 upon the Husband's Petition

for Dissolution of Marriage. The Court having reviewed the court file, having heard testimony of

the Husband, argument of counsel, and being otherwise fully advised in the premises, makes these

findings of fact and reaches these conclusions of law:

    1.    The parties were married to each other on July 13, 2002 in Miami, Florida. There is

one child born of the marriage, to wit: Isaiah Quinteros, age 6.

    2.    Petitioner/Husband has been a resident of the State of Florida for more than six (6)

months prior to the filing of the Petition for Dissolution of Marriage.

    3.    This Court has jurisdiction over the subject matter and the parties hereto.

    4.    The parties entered into a Mediated Settlement Agreement on December 1, 2008 (and

executed on January 28, 2009), which has been filed with the Court and is acceptable to both parties.

    5.    The marriage between the parties is irretrievably broken.

Exhibit D

1

CFN: 20090069906 BOOK 26735 PAGE 4130

**THEREFORE**, it is ORDERED and ADJUDGED that:

A)      The marriage between the parties is dissolved as the same is irretrievably broken and the parties are restored to the status of being single;

B)      The Mediated Settlement Agreement, which has been filed as an exhibit in this cause, is ratified by this Court and incorporated into (but shall survive) the Final Judgment of Dissolution of Marriage, and the parties are ordered to comply with all of its terms and provisions thereof;

C)      The Court finds that the husband has the present ability to pay the child support awarded herein; and

D)      The Court shall retain jurisdiction to enforce the terms and provisions of the Mediated Settlement Agreement and Final Judgment of Dissolution of Marriage.

**DONE and ORDERED** at Miami, Miami-Dade County, Florida on this ___**29**th___ day of **JANUARY 2009.**

HONORABLE LEON FIRTEL

**Copies furnished to:**
Shenna A. Stevens, Esq.
William Daniel, Esq.

*JUDGE LEON M. FIRTEL*

2

CFN # 106594614, OR BK 43110 Page 1071, Page 1 of 26, Recorded 11/14/2006 at
02:... Case 1:19-cv-02597-ABJ Document 1 Filed 10/07/19 Page 30 of 93
Case 1:00195-SM1 Doc 54-2 Filed 07/19/19 Entered 07/19/19 13:04:47 Desc
Exhibit B Page 1 of 31



Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO 63179-0021

This document was prepared by:
CitiMortgage, Inc.
19321B US Highway 19 N
Clearwater, FL 33764-3102

---

[Space Above This Line For Recording Data]

# MORTGAGE

MIN ▮▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated November 2, 2006
together with all Riders to this document.

(B) "Borrower" is Ronnie Quinteros And Jeannie Quinteros Husband and Wife

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is CitiMortgage, Inc.

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3010 1/01

-6A(FL) (0005) 01

Page 1 of 16                    Initials

VMP MORTGAGE FORMS - (800)521-7291                              CitiMortgage 3.2.5.07 V2



Exhibit B

Lender is a Corporation
organized and existing under the laws of New York
Lender's address is 1000 Technology Drive, O' Fallon, MO 63368-2240

(E) "Note" means the promissory note signed by Borrower and dated November 2, 2006
The Note states that Borrower owes Lender Three Hundred Twenty Eight Thousand

Dollars
(U.S. $328,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than December 1, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | Schedule "A" |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:

-6A(FL) (0005).01                Page 2 of 16                Form 3010 1/01
                                                             CitiMortgage 3.2.5.07 V2

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County                    [Type of Recording Jurisdiction]
of Broward                                                                                                  [Name of Recording Jurisdiction]:
The Assessor's Parcel Number (Property Tax ID#) for the Real Property is 199350208700.
Exhibit "A" attached hereto and made a part hereof:

Parcel ID Number: 199350208700                                               which currently has the address of
1596 Salerno Cir                                                                                                                [Street]
Weston                                                      [City], Florida 33327-1903            [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and/sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(FL) (0005).01                         Page 3 of 16                                          Form 3010    1/01
                                                                                                          CitiMortgage 3.2.5.07 V2

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

CMP-6A(FL) (0005).01                    Page 6 of 16              Initials                  Form 3010   1/01
                                                                                CalMortgage 3.2.5.07 V2

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

-6A(FL) (0005).01      Page 7 of 16      Form 3010 1/01
CitiMortgage 3.2.5.07 V2

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials: _____

Form **3010** **1/01**

CitiMortgage 3.2.5.07 V2

Page 8 of 16

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

Page 10 of 16

Initials

Form 3010  1/01
CitiMortgage 3.2.5.07 V2

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

-6A(FL) 00051.01                    Page 11 of 16          Initials:            Form 3010  1/01
                                                                                CitiMortgage 3.2.5.07 V2

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

-6A(FL) (0005).01                    Page 13 of 16              Initial                  Form 3010  1/01
                                                                                       QuiMortgage 3.2.5.07 V2

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Initials

Loan# 6A(FL) (0005).01                    Page 14 of 16                    Form 3010  1/01
                                                                          CitiMortgage 3.2.5.07 V2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____ (Seal)
Ronnie Quinteros                  -Borrower

_____ (Seal)
Jeannie Quinteros                 -Borrower
(Sign Original Only)

STATE OF FLORIDA,          *Broward*                    County ss:
The foregoing Instrument was acknowledged before me this    *11-2-06*            by

*Ronnie Quintero & Jeannie Quintero*

who is personally known to me or who has produced    *Fla DL's*        as identification.



Notary Public

Jay E Auerbach
My Commission DD184322
Expires March 02, 2007

COMP-6A(FL) (0005).01              Page 16 of 16              Initials: [signature]    Form 3010    1/01
                                                             CitiMortgage 3.2.5.07 V2

EXHIBIT "A"

## LEGAL DESCRIPTION

LOT 87
SAN MESSINA

A portion of Parcel C of Sectors 3 and 4 Boundary Plat, according to
the Plat thereof, recorded in Plat Book 146, Page 18, of the Public
Records of Broward County, Florida, being more particularly
described as follows:

Commence at the Southwest corner of Parcel B as shown on said Plat;

Thence South 86°59'47" East for a distance of 1,055.81 feet to the Point of
Beginning;

Thence North 86°04'08" East for a distance of 44.86 feet;

Thence North 86°26'12" East for a distance of 1.34 feet;

Thence South 03°29'52" East for a distance of 100.00 feet to a point on a curve, said
point bears South 03°29'52" East to the radius point of the next described curve;

Thence Westerly along a circular curve to the left having a radius of
3,050.00 feet, a central angle of 00°50'25", for an arc distance of 44.73
feet;

Thence North 04°20'18" West for a distance of 100.00 feet to the Point
of Beginning;

Said lands situate, lying and being in Broward County, Florida.

DoubleTime•

# ADJUSTABLE RATE RIDER

### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER Is made this      2nd      day of   November, 2006   ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
CitiMortgage, Inc.

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:

1596 Salerno Cir, Weston, FL  33327-1903
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of            6.375 %. The Note provides
for changes in the interest rate and the monthly payments as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of December, 2009            ,
and on that day every 12th month thereafter. Each date on which my interest rate could
change is called a "Change Date."

**MULTISTATE ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family - Fannie Mae
UNIFORM INSTRUMENT**

Form 3189 6/01
Wolters Kluwer Financial Services
VMP ®-166R (0401).01
Page 1 of 4          Initials:

CitiMortgage 3.2.5.07 V2

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two & 25/100                                                                    percentage points
(                    2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.375 % or less than                             4.375%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than                             12.375%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Initials: _____

VMP ®-166R (0401).01                    Page 2 of 4                              Form 3189 6/01
                                                                      CitiMortgage 3.2.5.07 V2

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

VMP ®-166R (0401).01          Page 3 of 4          Initials: _____  Form 3189 6/01

CitiMortgage 3.2.5.07 V2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
Ronnie Quinteros                 -Borrower

_____ (Seal)
Jeanette Quinteros               -Borrower

*(Sign Original Only)*

VMP®-166R (0401).01          Page 4 of 4          Form 3189 6/01
                                                  CitiMortgage 3.2.5.07 V2

Loan #: ████████

# ADJUSTABLE RATE ASSUMPTION RIDER

THIS ASSUMPTION RIDER is made this __2nd__ day of __November__ , __2006__ ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned person whether
one or more, (the "Borrower") to secure Borrower's Note to _CitiMortgage, Inc., 1000 Technology
Drive, O' Fallon, MO 63368-2240_
(the "Lender") of the same date and covering the property described in the Security Instrument and
located at: _1596 Salerno Cir, Weston, FL 33327-1903_

### (PROPERTY ADDRESS)

ASSUMPTION COVENANTS. In addition to the convenants and
agreements made in the Security Instrument, Borrower and Lender
further covenant and agree as follows:

A. **ASSUMPTION.** Any person purchasing the Property from Borrower may assume full liability
to repay Borrower's Note to Lender under the terms and conditions set out in this Assumption
Rider.

B. **AGREEMENT.** Lender may require the Purchaser to sign an assumption agreement, in the form
required by Lender, which obligates the Purchaser to keep all the promises and agreements made
in the Note and Security Instrument. Borrower will continue to be obligated under the Note and
Security Instrument unless Lender releases Borrower in writing.

C. **APPLICABILITY.** Lender is bound by these conditions and terms, as follows:
   1. This Assumption Rider applies only to the first transfer of the Property by Borrower and not
      to a foreclosure sale;
   2. Purchaser must be an individual, not a partnership, corporation or other entity;
   3. Purchaser must meet Lender's credit underwriting standards for the type of loan being
      assumed as if Lender were making a new loan to Purchaser;
   4. Purchaser shall assume only the balance due on the Note at the time of assumption for the
      term remaining on the Note;
   5. If applicable, Borrower's private mortgage insurance coverage must be transferred to the
      Purchaser in writing, unless waived by Lender;
   6. If Borrower's Note has a conversion feature and Borrower has exercised the right of
      conversion of this loan to a fixed rate loan from Lender, this Assumption Rider is void and
      Lender has no obligation to allow assumption by a Purchaser from Borrower; and
   7. Lender must reasonably determine that Lender's security will not be impaired by the loan
      assumption.

MB-1908 Rev. 3/99    Page 1 of 2

CitiMortgage 3.2.5.07 V2

Loan #:

D. **ASSUMPTION RATE.** Lender will allow assumption by Purchaser at Borrower's Note interest rate in effect at the time of assumption.

E. **ADDITIONAL CHARGES.** In addition, Lender may charge an amount up to one percent (1%) of the current Note balance and its normal loan closing costs, except the cost of a real estate appraisal.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants of this Assumption Rider.

_____ (Seal)
Ronnie Quinteros                  -Borrower

_____ (Seal)
Jeanne Quinteros                  -Borrower

MB-1908  Rev.  3/99    Page 2 of 2

CitiMortgage 3.2.5.07 V2

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this Second     day of November, 2006     , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to CitiMortgage, Inc.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 1596 Salerno Cir, Weston, FL 33327-1903

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in Codes, Covenants and Restrictions

(the "Declaration"). The Property is a part of a planned unit development known as San Messina

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01
Wolters Kluwer Financial Services     Page 1 of 3     Initials:
VMP®-7R (0411).01

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

VMP®-7R (0411).01                    Page 2 of 3              Initials                    Form 3150 1/01
                                                                                         CitiMortgage 3.2.5.07 V2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
Ronnie Quintero                    -Borrower

_____ (Seal)
Jeannie Quinteros                  -Borrower
(Sign Original Only)

VMP®-7R (0411).01            Page 3 of 3            Form 3150 1/01
                                                   CitiMortgage 3.2.5.07 V2

PREPARED BY & RETURN TO:
M. E. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092

Assigned Code 145

**Assignment of Mortgage**          Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
("MERS") AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS P.O. Box 2026, Flint, MI
46501-2026 (Assignor) by these presents does assign and set over, without recourse, to CASTLE PEAK 2010-1 LOAN
TRUST whose address is c/o Acqura Loan Services, 7880 Bent Branch Drive, Suite 150, Irving, TX 75063 (Assignee) the
described mortgage with all interest, all liens, any rights due or to become due thereon, executed by RONNIE QUINTEROS
AND JEANNIE QUINTEROS, HUSBAND AND WIFE to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
(MERS) AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS. Said mortgage Dated:
11/2/2006 is recorded in the State of FL., County of Broward on 11/14/2006, Book 43110 Page 1071 CFN# 106594614
AMOUNT: $ 328,000.00 Parcel # 199350208700 Property Address: 1596 SALERNO CIR, WESTON, FL 33327

IN WITNESS WHEREOF, the undersigned corporation/trust has caused this instrument to be executed as a sealed instrument by
its proper officer. Executed on: _6/24/11_
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR CITIMORTGAGE, INC., ITS
SUCCESSORS AND ASSIGNS

By: _____          
Doug Battin, Assistant Secretary          QUINTEROS  KL

State of Texas  County of Dallas
  On _6/24/11_ , before me, the undersigned, Doug Battin, personally known to me, acknowledged that he/she is
Assistant Secretary of/ for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR
CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS and that he/she executed the foregoing instrument and that such
execution was done as the free act and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS
NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS.

M STERN
Notary Public, State of Texas
My Commission Expires
December 04, 2012

Notary public, M Stern
My commission expires: December 4, 2012

204858 MIN          MERS Phone 888-679-6377
FL Broward          ACQURA/ASMT/CASTLE

**PREPARED BY:**
Castle Peak 2010-1 Loan Trust
c/o 12 S. 6th St., Ste. 950
Minneapolis,MN 55402
**WHEN RECORDED RETURN TO:**

Parcel Identification:
199350208770

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, **Castle Peak 2010-1 Loan Trust**, located at c/o 12 S. 6th St., Ste. 950,
**Minneapolis, MN  55402** ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to: **National Home
Investors, LLC**, located at **National Home Investors, LLC, 707 Aldridge Rd, Suite B, Vacaville, CA 95688**
("ASSIGNEE/GRANTEE") all beneficial interest under that certain **MORTGAGE** dated 11/2/2006, and executed
by **RONNIE QUINTEROS AND JEANNIE QUINTEROS HUSBAND AND WIFE,** borrower(s) to:  Mortgage
**Electronic Registration Systems, Inc.,** solely as nominee for CitiMortgage, Inc., as original lender, and certain
instrument recorded 11/14/2006, in Book: 43110 Page: 1071, or as CFN: 106594614, in the Official Records of
**Broward** County, the State of **Florida,** given to secure a certain Promissory Note in the amount of $328,000.00
covering the following described property:

Commonly known as: 1596 Salerno CIR, Weston, Florida  33327

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due
thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have
reconveyed, in whole or in part, the real property described therein.

Dated: 6/26/13

_____
Witness

_____
Witness

ASSIGNOR: Castle Peak 2010-1 Loan Trust by Castle Peak
Capital Advisors, LLC in its capacity as Manager

By: _____

Name: Steve Allison

Title: Partner

State of Minnesota

County of Hennepin

Before me, **Katherine Elizabeth Wilson,** duly commissioned Notary Public, on this day personally appeared **Steve Allison, Partner,** personally known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ⟨21⟩ day of ⟨June⟩ , 20⟨13⟩ .



KATHERINE ELIZABETH WILSON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/18

_____
Notary Public's Signature

Printed Name: **Katherine Elizabeth Wilson**

My Commission Expires: 1/31/2018

INSTR # 11... Case 1:19-cv-02997-ABJ Document 1/2 Filed 10/07/19 Page 59 of 93
Broward Case... 19-00106-SMR... n , Doc... perty File... 07/19/19... RD Entered 07/19/19 13:04:47 Desc
Exhibit B Page 30 of 31

Prepared by: Nicolas Lampariello
Lampariello & Warrick, P.A.
150 S. Pine Island Road, Ste. 220
Plantation, FL 33324
Tel. (954) 628-3579
Fax: (954) 343-1414

## ASSIGNMENT OF MORTGAGE

For Valuable Consideration, NATIONAL HOME INVESTORS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS WHOSE ADDRESS IS 707 ALDRIDGE ROAD, SUITE B, VACAVILLE, CA 95688, (Assignor) hereby assigns, and transfers to CAPITAL VENTURES INTERNATIONAL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS C/O LAMPARIELLO & WARRICK, P.A., 150 SOUTH PINE ISLAND ROAD, SUITE 220, PLANTATION, FL 33324 (Assignee), all its right, title and interest in and to that certain Mortgage executed by RONNIE QUINTEROS AND JEANNE QUINTEROS HUSBAND AND WIFE, as borrower to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A CORPORATION DULY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, ACTING SOLELY AS NOMINEE FOR CITIMORTGAGE, INC., A CORPORATION DULY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW YORK, and bearing the date of November 2, 2006 and recorded on November 14, 2006 as Instrument Number 106594614, in Book 43110, at Page 1071 of Official Records in the County Recorder's office of Broward County, State of Florida, describing land therein as:

> LOT 87 SAN MESSINA, A PORTION OF PARCEL C OF SECTORS 3 AND 4 BOUNDARY PLAT, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 146, PAGE 18, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.

Commonly known as 1596 Salerno Circle, Weston, Florida 33324
APN / Parcel Number: 4939-35-02-0870

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage. The original principal amount due under this note is THREE HUNDRED TWENTY EIGHT THOUSAND DOLLARS AND NO CENTS ($328,000.00).

All documentary stamp taxes due and payable or to become due and payable pursuant to §201.22 F.S. have been paid.

IN WITNESS WHEREOF, the Assignor has caused these presents to be signed by its duly authorized officer this 13 day of November, 2014.

National Home Investors, LLC

By: _____
Name: GREGORY S. OWEN
Title: MANAGING MANAGER

Witness: _____
Printed Name: Jill Ramsey

Witness: _____
Printed Name: FRANK De La CAMPA

ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF CALIFORNIA )
COUNTY OF SOLANO ) SS.

On November 1, 2014 before me _Michelle Panizza_____, Notary Public, personally appeared _Gregory B. Ewen_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Michelle Panizza_ (NOTARY SEAL)
Signature of Notary Public

MICHELLE PANIZZA
Commission No. 1982283
NOTARY PUBLIC-CALIFORNIA
SOLANO COUNTY
My Comm. Expires JULY 16, 2018

## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JEANNIE QUINTEROS,<br>      Debtor. | *    Case No. 19-00195-SMT<br>*    Chapter 13<br>* |

\*   \*   \*   \*   \*   \*   \*   \*    \*   \*   \*   \*   \*

**CAPITAL VENTURES**
**INTERNATIONAL, LLC**
          **Movant,**
**v.**

**JEANNIE QUINTEROS,**
          **Respondent/Debtor,**

**RONNIE QUINTEROS,**
          **Respondent/Co-Debtor,**
**And**

**NANCY SPENCE GRIGSBY, Trustee**

\*   \*   \*   \*   \*   \*   \*   \*    \*   \*   \*   \*   \*

### ORDER GRANTING RELIEF FROM AUTOMATIC STAY AS TO
### REAL PROPERTY AT 1596 SALERNO CIRCLE, WESTON, FL 33327

Upon review of the Motion for Relief from Automatic Stay and Co-Debtor Stay (the

"Motion") filed by Capital Ventures International, LLC (the "Movant"), and with [no] opposition

having been filed, it is

**ORDERED**, that the Motion is **GRANTED**; and it is further

1

#3321559v.1

**ORDERED**, that the Automatic Stays imposed by 11 U.S.C. §362(a) and §1301(a) are

**TERMINATED** to enable Movant, and/or its successors and assigns, to cause the

commencement or continuation of a foreclosure proceeding, and/or pursuant other means, as

permitted by applicable state law, of obtaining or transferring title to the real property belonging

to the Debtor and commonly known as 1596 Salerno Circle, Weston, Florida 33327 (the

"Property"), and to allow the purchaser or transferee to obtain possession same; and it is further

**ORDERED**, that the Automatic Stay of 11 U.S.C. §362(a) shall not be reimposed as to

the Debtor's interest in the Property by the conversion of this case to a case under another

Chapter of the United States Bankruptcy Code.


CC:
Movant
Trustee
Debtor's Counsel
Debtor

**END OF ORDER**

2

#3321559v.1

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JEANNIE QUINTEROS, | Case No. 19-00195-SMT |
| Debtor. | Chapter 13 |

CAPITAL VENTURES
INTERNATIONAL, LLC
Movant,

v.

JEANNIE QUINTEROS,
Respondent/Debtor,

RONNIE QUINTEROS,
Respondent/Co-Debtor,
And

NANCY SPENCE GRIGSBY,
      Trustee

### OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY AND CO-DEBTOR STAY AS TO REAL PROPERTY AT 1596 SALERNO CIRCLE, WESTON, FL 33327

Comes now the Co-Debtor Respondents, Jeannie and Ronnie Quinteros (Respondents/Co-Debtors), by their attorney, Alisha Gordon, and prays that this Court enter an Order Denying Capital Ventures International, LLC ("Movant") Motion for Relief from the Automatic Stay of 11 U.S.C. Section 362(a) as to 1596 Salerno Circle, Weston, FL 33327 (the "Property"). In further support of this Opposition, Respondents/Co-Debtors respectfully states:

1.     On or about March 27, 2019 (the "Petition Date"), Jeannie Quinteros (the "Debtor") filed a petition under Chapter 13 of the United States Bankruptcy Code.

2.     On or about November 2, 2006, the Debtor and Ronnie Quinteros ("Co-Debtor") executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $328,000.00 (the "Note").

3.     On or about January 8, 2015, the Debtor and Movant entered into a Loan Modification Agreement. The Loan Modification agreement consensually modified the terms of the Note.

Copies of the Affidavit of Lost Note, the Note, the Allonge to the Note, and the Loan
Modification were recorded in the Public Records of Broward County, Florida on or about
November 14, 2006, Instrument #106594614, Book 43110 at Page 1071.

4.      The US Bankruptcy Code and Rules state, "...movant has the initial burden to establish
that cause exists, while the debtors bears the ultimate burden on all other issues other than
equity in its property. 11 USC § 362(g); In re Poissant, B. R., 2009 WL 1402269 (Bankr. N. D.
Ohio May 20, 2009).

5.      Movants, Capital Ventures International LLC, has not met this burden.

6.      Debtor unequivocally, opposes that Capital Ventures International, LLC are **NOT** owed
mortgages monies less known have any interest what-so-ever in 1596 Salerno Cir., Weston, FL.

7.      Debtor believes that the Florida Broward County Court's Ruling stated that National
Home Investors, LLC nor its successor in interest have "standing" less known a right to
foreclosure on 1596 Salerno Circle, Weston, FL should remain enforced in the United State
Bankruptcy Court for the District of Columbia.

8.      To further explain the Movant's lack of standing, one would need to understand
National Home Investors, LLC role in Movant's Motion.

9.      Capital Ventures International, LLC and National Home Investors, LLC have the same
address, same clients, same financial interest, same exact structure as Capital Ventures
International, LLC, Lampariello Law Group, Maddison Management Services LLC and Nicholas
Lampariello, Esq.

10.     Capital Ventures International, LLC is a successor of National Home Investors, LLC with
a similar board of directors, financial officers, exercise continuous sovereign authority over;
ability to control and direct the making and administration of financial transactions.in. Capital
Venture International, LLC has the identical responsible for business oversight and maximizing
profits as National Home Investors, LLC.

11.     National Home Investors, LLC dba Capital Ventures, LLC oversees the interest, activities
and affairs of each other, including accountable to the State of Florida Real Property
Redemption rights and laws.

12.     The newly created "entity" called Capital Ventures LLC "movants" was "established" to
attempt to enforce rights that a Florida Court deemed unenforceable and dismissing of National

Home Investors, LLC foreclosure redemptions rights with prejudice.

13.      The totality and entirety of the Debtor's Florida State Court's decision, ruling and dismissal of foreclosure cases with "prejudice" is completely ignored in Movant's motion and is brought in this Honorable Federal Court in hopes of "duping" this Court to mortgage payments and egregiously foreclosure redemption rights that they have not and do not possess in the Florida State Court.

14.      The totality and entirety of the Debtor's Florida State Court's Decision and Dismissal of Foreclosure with "prejudice" is the posture that this Court should analyze and rule on this contested Motion.

15.      Next, any secured lender, attempting to take advantage on a Debtor under the protection of the Bankruptcy Code, defeats the entire purpose of bankruptcy protection

16.      Notably, Debtor Respondent, Jeannie Quinteros, has made all Trustee payments so which interest may have standing to claim mortgage payments is adequately protected.

17.      Despite, National Home Investors dba Capital Ventures International, LLC and its assignees and/or successors in interest Capital Ventures International, LLC aka National Home Investors, LLC , numerically calculation that someone may have a secured claim against 1596 Salerno Circle, Weston, FL, this does **not** entitle "them", Capital Ventures International, LLC" to the monthly payments.

18.      Further, case law states that the Bankruptcy Court should review Oppositions to Motion to Relief Stay,"... on case by case basis". In re Laguna Associates, L.P., 30 F. 3d 734, 737 (6th Civ. 1994). In determining whether cause exists, the bankruptcy court should base its decision on the hardships imposed on the parties with an eye toward the overall goals of the Bankruptcy Code. In re C&S Grain Co., 47 F. 3d 233, 238 (7th Civ. 1995).

19.      Next, with the help of Debtors' counsel, Debtors are strategically aligning their income and expenses for a profitable income stream, so Debtors can remain current on future mortgage payments that will be tendered to the "real lienholder" on the "authentic deed of trust".

20.      Pursuant to 11 USC 362(m) (2) the Debtors can demonstrate to this Honorable Court that the situation giving rises to the lessor's certification has been remedied and the Movant's do not have standing to bring this Motion less known any secured interest in 1596 Salerno

Circle, Weston, FL.

For the reasons set forth herein, the Motion to Relief of Stay should be **Denied**
and stay provided under subsection (a) (3) remaining in effect until the termination of the stay
under this section.

Respectfully Submitted on Behalf of Debtors, Jeannie and Ronnie Quinteros,

Dated:____July 29, 2019____            s/ Alisha Gordon
                                       Alisha Gordon
                                       Law Offices of Alisha Gordon MBA
                                       1101 Connecticut Avenue, Ste 450
                                       Washington, DC 20036
                                       (305) 834-0396
                                       Counsel for the Debtors/Respondents

### CERTIFICATE OF SERVICE

I hereby certify that on this 29th day July, 2019, I reviewed the Court's CM/ECF system
and it reports that an electronic copy of the foregoing Opposition to Motion for Relief from
Automatic Stay will be served electronically by the Court's CM/ECF system on the following:

**19-00195-SMT Notice will be electronically mailed to:**

Alisha Elaine Gordon on behalf of Debtor Jeannie Quinteros
agordon188@aol.com, info@marylandnc.com

Nancy Spencer Grigsby
grigsbyecf@ch13md.com

Michael J. Klima, Jr. on behalf of Creditor Santander Consumer USA Inc.
jklima@peroutkalaw.com, bankruptcy@peroutkalaw.com

Jon Jay Lieberman on behalf of Defendant Maddison Management Services LLC
bankruptcy@sottileandbarile.com

Gregory Christopher Mullen on behalf of Creditor Capital Ventures International, LLC
gmullen@tydingslaw.com, Gregory.c.mullen@gmail.com,edondero@tydingslaw.com

Gregory Christopher Mullen on behalf of Defendant Capital Ventures International LLC
gmullen@tydingslaw.com, Gregory.c.mullen@gmail.com,edondero@tydingslaw.com

Gregory Christopher Mullen on behalf of Defendant National Home Investors, LLC
gmullen@tydingslaw.com, Gregory.c.mullen@gmail.com,edondero@tydingslaw.com

Stephen Printiss Murphy on behalf of Defendant CitiMortgage, Inc.
steve.murphy@lockelord.com

U. S. Trustee for Region Four
USTPRegion04.DC.ECF@USDOJ.GOV

I hereby further certify that on this 29th day of July, 2019, a copy of the foregoing  Opposition
to Motion for Relief from Automatic Stay was also mailed first class mail, postage prepaid, to:

Jeannie Quinteros

**19-00195-SMT Notice will not be electronically mailed to:**

Nicholas Lampariello on behalf of Defendant Capital Ventures International LLC
Lampariello Law Group
4760 W. Commercial Blvd.
Tamarac, FL 33319

Nicholas Lampariello on behalf of Defendant Maddison Management Services LLC
Lampariello Law Group
4760 W. Commercial Blvd.
Tamarac, FL 33319

Nicholas Lampariello on behalf of Defendant National Home Investment LLC
Lampariello Law Group
4760 W. Commercial Blvd.
Tamarac, FL 33319

Nicholas Lampariello on behalf of Defendant Nicholas Lampariello
Lampariello Law Group
4760 W. Commercial Blvd.
Tamarac, FL 33319

See Attached Mailing Matrix

s/ Alisha Gordon  7/29/2019
Alisha Gordon
Law Offices of Alisha Gordon MBA
1101 Connecticut Avenue, Ste 450
Washington, DC 20036

(305) 834-0396
Counsel for the Debtors/Respondents

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE:                      )
       JEANNIE QUINTEROS,     )     Case No.:     19-00195 SMT
                      )     Chapter 13
       Debtor.             )
                      )
_____)
                      )
Capital Ventures International, Inc.  )
        Movant,         )
                      )
v.                       )
                      )
Jeannie Quinteros,        )
        Respondent/Debtor,   )
                      )
Ronnie Quinteros,        )
        Respondent/Co-Debtor,  )
And                   )
                      )
Nancy Spencer-Grigsby,    )
        Chapter 13 Trustee.   )
                      )
_____)

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY AS TO REAL PROPERTYAT 1596 SALERNO CIRCLE, WESTON, FL 33327

**COMES NOW** the debtor Jeannie Quinteros, by and through undersigned

counsel, hereby files the instant Supplemental Memorandum of Law to the previously

filed Opposition to Motion for Relief from Automatic Stay as to Real Property at 1596

Salerno Circle, Weston, Fl 33327.  In support thereof the debtor states as follows:

### PROOF OF CLAIM PROCESS

The Bankruptcy Code and Bankruptcy Rules govern the requirements for the filing and

1

allowance of proofs of claim in a chapter 13 case. Creditors may file proofs of claim in

bankruptcy proceedings pursuant to § 501(a). Filed claims are "deemed allowed, unless a

party in interest . . . objects." 11 U.S.C. § 502(a). Pursuant to Bankruptcy Rule 3002(a),

an unsecured creditor generally is required to file a proof of claim for purposes of

allowance of its claim. The significance of having an allowed claim in a chapter 13 case

is straightforward: "after a plan is confirmed, distribution shall be made to creditors

whose claims have been allowed . . . ." Fed. R. Bankr. P. 3021. "Disallowed claims will

not participate in the case or receive any payment with regards to that claim." In re Ruiz

Martinez, 513 B.R. 779, 783 (Bankr. D.P.R. 2014) (citing Alan N. Resnick & Henry J.

Sommer, 5 Collier on Bankruptcy ¶ 502.01 (16th ed. 2012); In re Pick & Save, Inc., 478

B.R. 110, 121 (Bankr. D.P.R. 2012)).

Section 502(b) enumerates a variety of grounds for disallowance of a claim

including untimely filed claims. 11 U.S.C. § 502(b)(9).6 Thus, in chapter 13 cases, a

timely filed proof of claim is a precondition to allowance of an unsecured claim and the

creditor's right to receive distributions under the plan.

In a chapter 13 case, "a proof of claim is timely filed if it is filed not later than 90

days after the first date set for the meeting of creditors called under § 341(a) of the

Code." It is undisputed that National did not file a proof of claim or obtain an extension

of the deadline before the claims bar date expired.

At no time can the movant claim the filing of an "Informal Proof of Claim" that

would survive the scrutiny of the Court's requirement:

2

- the proof is in writing
- the writing includes a demand against the bankruptcy estate
- the writing demonstrates the intent to hold the estate liable
- the writing is filed with the bankruptcy court, and
- allowing the claim would be fair under the circumstances of the case.

Since the movant has not filed anything that can support a claim that a timely filed

Informal Proof of Claim has been filed the Motion for Relief must be denied.

## TIME FOR FILING

The deadline for filing a proof of claim for non-governmental creditors in a

Chapter 13 bankruptcy case is 70 days after the petition filing date. (On December 1,

2017, the previous deadline of 90 days after the first meeting of the creditors was

shortened to the current period). In the instant matter the Deadline was established as

June 5, 2019.  The movant failed to file a timely Proof of Claim.

## UNTIMELY FILED PROOD OF CLAIM EFFECT UPON THE RIGHTS OF THE CREDITOR

The issue before the Court is whether Rule 3002(c)'s deadline applies to *all*

creditors or merely *unsecured* ones. The Bankruptcy court has held, that the Rule applies

only to secured creditors. The language of Rule 3002(c) firmly supports this position.

Ruile 3002 requires the filing of a proof of claim or interest, applies specifically to

secured and unsecured creditors. See FED. R. BANKR.P. 3002(a) ("A secured and

unsecured creditor or an equity security holder must file a proof of claim or interest for

the claim or interest to be allowed."). In fact, Rule 3002 expressly refers to "secured

creditors."

A creditor must file a proof of claim in order to participate in Chapter 13 plan distributions. See FED. R. BANKR.P. 3021 (permitting distribution to creditors "whose claims have been allowed"); 11 U.S.C. § 502(a) (providing that a claim is "deemed allowed" when a proof of claim is filed under section 501); see also *In re Brisco*, 486 B.R. 422, 430 (Bankr.N.D.Ill.2013); *In re Strong*, 203 B.R. 105, 112 (Bankr.N.D.Ill.1996).

Furthermore, secured creditors have an obligation to proceed timely to enable a Bankruptcy Court to determine whether a plan is feasible and otherwise comports with the requirements of Chapter 13 in order to be a confirmable plan.

The above result is not unduly harsh. Creditors have notice of the consequences of the failure to file a timely Proof of Claim concerning their ability to seek adequate protection or relief from the automatic stay. The 14th edition of *Collier* clearly sets forth the fact that the holder of a secured claim who has not filed a timely Proof of Claim is not eligible to seek relief from the automatic stay. See 15 *Collier on Bankruptcy* ¶¶ 13–401.06, p. 13–401–14; 401.07, p. 13–401–15; and 302.08[1], fn. 9, p. 13–302–16. (14th ed.)

This Court is requested to accept the conclusion that the lien of a secured creditor that is being treated as an unsecured creditor does survive the Chapter 13 proceeding. However, the survival of this lien does not require adequate protection of said lien during the Chapter 13 proceeding.

Rule 3002 is binding on the issue of when secured claims had to be filed in the

4

case at bench. Because the movant failed to file a timely proof of claim in accordance with Rule 13–302(e)(1), the movant forfeited its secured status and may not seek relief from the automatic stay.

The deadline for filing a proof of claim in Federal Rule of Bankruptcy Procedure 3002(c) applies to *all* claims, including those of secured creditors. Because the movant did not file a proof of claim before the Rule 3002(c) deadline, the bankruptcy court should disallow the secured portion of the movant's claim.

**WHEREFORE**, given the debtor's Supplemental Memorandum of Law, the debtor prays this honorable Court:

A. Denies the Movant's Motion; and

B. Deem the Movant's claim to be treated as an unsecured creditor;

C. for any other relief deemed necessary and proper.

August 8, 2019

*/s/ William C. Johnson, Jr.*
William C. Johnson, Jr. #470314
6305 Ivy Lane
Suite 630
Greenbelt, Maryland 20770
(202) 525-2958

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 8, 2019 a copy of the foregoing has been sent via first class mail, postage pre-paid, to the following:

**19-00195-SMT Notice will be electronically mailed to:** Alisha Elaine Gordon on behalf of Debtor Jeannie Quinteros agordon188@aol.com, info@marylandnc.com ;

Nancy Spencer Grigsby grigsbyecf@ch13md.com ;

Michael J. Klima, Jr. on behalf of Creditor Santander Consumer USA Inc.

jklima@peroutkalaw.com, bankruptcy@peroutkalaw.com ;

Jon Jay Lieberman on behalf of Defendant Maddison Management Services LLC

bankruptcy@sottileandbarile.com ;

Gregory Christopher Mullen on behalf of Creditor Capital Ventures International, LLC

gmullen@tydingslaw.com;

Gregory.c.mullen@gmail.com,edondero@tydingslaw.com ;

Gregory Christopher Mullen on behalf of Defendant Capital Ventures International LLC

gmullen@tydingslaw.com;

Gregory.c.mullen@gmail.com,edondero@tydingslaw.com

Gregory Christopher Mullen on behalf of Defendant National Home Investors, LLC

gmullen@tydingslaw.com,

Gregory.c.mullen@gmail.com,edondero@tydingslaw.com

Stephen Printiss Murphy on behalf of Defendant CitiMortgage, Inc.

steve.murphy@lockelord.com

U. S. Trustee for Region Four USTPRegion04.DC.ECF@USDOJ.GOV


August 8, 2019                                  /s/ William C. Johnson, Jr.
                                                William C. Johnson, Jr.


6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>    JEANNIE QUINTEROS,<br><br>    Debtor.<br><br>_____<br><br>Capital Ventures International, Inc.<br>        Movant,<br><br>v.<br><br>Jeannie Quinteros,<br>        Respondent/Debtor,<br><br>Ronnie Quinteros,<br>        Respondent/Co-Debtor,<br>And<br><br>Nancy Spencer-Grigsby,<br>        Chapter 13 Trustee.<br><br>_____ | Case No.:    19-00195 SMT<br>Chapter 13 |

## MOTION TO STRIKE ALLEGED SECURED CREDITOR CAPITAL VENTURES INTERNATIONAL, INC'S MOTION FOR RELIEF AS TO REAL PROPERTY AT 1596 SALERMO CIRCLE, WESTON, FL 33327

**COMES NOW** the debtor Jeannie Quinteros, by and through undersigned

counsel, hereby files the instant Motion to Strike Alleged Secured Creditor Capital

Ventures International, Inc.'s Motion for Relief from Automatic Stay as to Real Property

at 1596 Salerno Circle, Weston, Fl 33327.  The debtor alleges: (1) The creditor does not

own the Note and (2) The creditor does not have the right to relief from the automatic

stay due to the failure to timely file a "Proof of Claim." In support thereof the debtor

states as follows:

**FOREWORD**

To be clear, the instant motion does not attempt to void a secured lien against real

estate. While arguably, the secured creditor in this matter is not the actual owner of the

mortgage note, and therefore does not have standing to seek a "Motion for Relief," it is

further argued that it should not be allowed the requested relief because it forfeited the

right to seek relief from the automatic stay due to its failure to file a "Proof of Claim."

The movant accepts and supports the universally accepted view that secured liens,

if legitimate, survive bankruptcy proceedings. However, this motion also seeks to

resolve a procedural matter of apparent first impression in this jurisdiction. At issue is

whether the failure of a secured creditor with a lien against real estate to, formally or

informally, timely file a Proof of Claim, should bear any consequences beyond *unsecured*

*treatment of its' claim by the Chapter 13 Trustee during disbursement* under the Federal

Rules of Bankruptcy Procedure.

Assuming arguendo, the "Note" can be produced, it is the movant's position that a

secured creditor who fails to timely file a Proof of Claim forfeits *all rights of a secured*

*creditor* while the debtor's bankruptcy case remains open. These rights include, but are

not limited to, the right to file a "Motion for Relief of Stay."[1]

---

[1] For instance, under §§1322 and 1325, priority creditors are entitled to full payment of their claims, and secured creditors are entitled to receive an amount equal to the value of their claims as of the effective date of the plan. All creditors are entitled to object to the confirmation of a plan on several different bases, including lack of feasibility, the failure to file in good faith, and the failure to meet the "best interests of creditors" or the "disposable income"

## RELEVANT FACTS

1. The creditor Capital Ventures International, LLC scheduled a foreclosure sale of the debtor's real property identified as 1596 Salerno Circle, Weston, Fl 33327.

2. The debtor filed her petition for relief under Chapter 13 of the United states Bankruptcy Code on March 27, 2019 to stop the foreclosure sale.

3. The debtor disputes the debt alleged to be due and owed to the creditor. The basis for the dispute is the alleged creditor is not the holder of the note and the debtor thereby disputes the alleged creditor's right to seek motion for relief from the automatic stay.

4. The debtor has not provided for any payment to the alleged creditor as it is not the holder of the note.[2]

5. The creditor was promptly notified of the foreclosure sale and ceased the conduct of foreclosure pending the resolution of the debtor's bankruptcy case.

6. On June 5, 2019, the debtor filed an Adversary Proceeding against the secured creditor captioned as *Quinteros v. Capital Ventures International, LLC, et. al.* – Adv. Proc. No. 19-10013.

7. The Proof of Claim deadline was set for June 5, 2019.

8. The Secured Creditor Capital Ventures International, LLC filed a Motion for Relief From Automatic Stay on July 19, 2019. [Dkt. No. 54].[3]

---

tests (§§1324, 1325). Creditors also have the right to request modification of a confirmed plan (§1329) and to object to entry of a discharge (§1328).

[2] The alleged creditor has been Ordered to produce more than a "Lost Note Affidavit" and "Allonge."

9. The Secured Creditor Capital Ventures International, LLC filed a "Motion to Dismiss the Adversary Proceeding" on July 19, 2019. [Adv. Proc. Dkt. No. 24].[4]

10. The instant matter has been filed "Pre-Confirmation."[5]

## NOTICE OF THE ORDER FOR RELIEF

It is well-settled that creditors are entitled to appropriate notice. Bankruptcy Code §342 requires that all claim-holders be given notice of the order of relief. In the instant matter, the secured creditor was given immediate notice of the case. While it is customary of the filing debtor to notify a foreclosing party of the Order for Relief, it becomes desirable for the debtor to do such to stop the actual foreclosure sale. At this point, the secured creditor has notice and have more than ample time to prepare its Proof of Claim. The debtor provided notice of the filing on March 27, 2019, the date of the bankruptcy filing and Order for Relief.

## PROOF OF CLAIM PROCESS

The Bankruptcy Code and Bankruptcy Rules govern the requirements for the filing and allowance of proofs of claim in a chapter 13 case. Creditors may file proofs of claim in bankruptcy proceedings pursuant to § 501(a). Filed claims are "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Pursuant to Bankruptcy Rule 3002(a), an unsecured creditor generally is required to file a proof of claim for purposes

---

[3] The filing of the Motion for Relief by the Secured Creditor was its first entry in the debtor's bankruptcy case. No prior indication of a formal or informal Proof of Claim existed at the time of entry for Dkt. No. 54.

[4] The filing of the Motion to Dismiss by the Secured Creditor was its first entry in the debtor's Adversary Proceeding No. 19-10013. No prior indication of a formal or informal Proof of Claim existed at the time of entry for Dkt. No. 24.

[5] Due to the filing of the Adversary Proceeding, the Confirmation hearing has been continued pending resolution.

of allowance of its claim. The significance of having an allowed claim in a chapter 13

case is straightforward: "after a plan is confirmed, distribution shall be made to creditors

whose claims have been allowed . . . ." Fed. R. Bankr. P. 3021. "Disallowed claims will

not participate in the case or receive any payment with regards to that claim." *In re Ruiz*

*Martinez*, 513 B.R. 779, 783 (Bankr. D.P.R. 2014) (citing Alan N. Resnick & Henry J.

Sommer, 5 Collier on Bankruptcy ¶ 502.01 (16th ed. 2012*); In re Pick & Save, Inc.*, 478

B.R. 110, 121 (Bankr. D.P.R. 2012)).

An "Untimely Filed Proof of Claim," as in the instant case, will not be an

"Allowed Claim."  Section 502(b) enumerates a variety of grounds for disallowance of a

claim including untimely filed claims. 11 U.S.C. § 502(b)(9).  Thus, in chapter 13 cases,

a timely filed proof of claim is a precondition to allowance of an unsecured claim and the

creditor's right to receive distributions under the plan.

In a chapter 13 case, "a proof of claim is timely filed if it is filed not later than 70

days after the first date set for the meeting of creditors called under § 341(a) of the

Code."  It is undisputed that National did not file a proof of claim or obtain an extension

of the deadline before the claims bar date expired.

At no time can the movant claim the filing of an "Informal Proof of Claim" that

would survive the scrutiny of the Court's requirement:

- the proof is in writing
- the writing includes a demand against the bankruptcy estate
- the writing demonstrates the intent to hold the estate liable
- the writing is filed with the bankruptcy court, and

5

- allowing the claim would be fair under the circumstances of the case.

Since the movant has not filed anything that can support a claim that a timely filed Informal Proof of Claim has been filed the Motion for Relief must be denied.

## TIME FOR FILING

The deadline for filing a proof of claim for non-governmental creditors in a Chapter 13 bankruptcy case is 70 days after the petition filing date. (On December 1, 2017, the previous deadline of 90 days after the first meeting of the creditors was shortened to the current period). In the instant matter the Deadline was established as June 5, 2019. The movant failed to file a timely Proof of Claim.

## UNTIMELY FILED PROOF OF CLAIM EFFECT UPON THE RIGHTS OF THE CREDITOR

The issue before the Court is whether Rule 3002(c)'s deadline applies to *all* creditors or merely *unsecured* ones. The Bankruptcy court has held, that the Rule applies only to secured creditors. The language of Rule 3002(c) firmly supports this position. Rule 3002 requires the filing of a proof of claim or interest, applies specifically to secured and unsecured creditors. See FED. R. BANKR.P. 3002(a) ("A secured and unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed."). In fact, Rule 3002 expressly refers to "secured creditors."

A creditor must file a proof of claim in order to participate in Chapter 13 plan distributions. See FED. R. BANKR.P. 3021 (permitting distribution to creditors "whose

claims have been allowed"); 11 U.S.C. § 502(a) (providing that a claim is "deemed allowed" when a proof of claim is filed under section 501); see also *In re Brisco,* 486 B.R. 422, 430 (Bankr.N.D.Ill.2013); *In re Strong,* 203 B.R. 105, 112 (Bankr.N.D.Ill.1996).

Furthermore, secured creditors have an obligation to proceed timely to enable a Bankruptcy Court to determine whether a plan is feasible and otherwise comports with the requirements of Chapter 13 in order to be a confirmable plan.  It is clear in these proceeding that creditor Capital Ventures International, LLC did not file a formal or informal proof of claim and has, at a bare minimum, inhibited the Bankruptcy Court from determining whether the Chapter 13 plan qualifies for confirmation.

## IMPACT OF A PRE-CONFIRMATION MOTION FOR RELIEF WITHOUT FILING A TIMELY PROOF OF CLAIM

The alleged secured creditor further does not have any rights if it files a Motion for Relief without a timely "Proof of Claim" prior to the Confirmation of the Chapter 13 Plan.  The Courts have found that if a plan has been confirmed, and the debtor has not adhered to the terms of the plan, then a secured creditor that has been taken care of under the plan has rights and can seek Relief from the Automatic Stay.  It does not matter at that point whether a proof of claim has been filed.

However, if the Chapter 13 Plan has not been confirmed, the aforementioned rights that would have been created by a confirmed plan do not exist. *In re Rebuelta*, 27 B.R. 137 (Bankr. N.D. Ga. 1983).

However, as in the instant matter, if the debtor's claim is in dispute, it matters not

whether plan has been confirmed.   What matters is "whether the creditor took adequate

steps to protect its interests."

> [A] secured creditor cannot simply absent itself from the bankruptcy process in
> chapter 13, then hope to obtain easy relief from the automatic stay after
> confirmation. Such a creditor could hardly maintain that cause existed for relief
> from stay where the debtor had made provision for the creditor in the plan and
> only the creditor's refusal to file a claim prevented it from receiving the adequate
> protection that had been offered.

> *In re Macias*, 195 B.R. 659, 662 n. 5 (Bankr.W.D.Texas 1996).

In further support of the position that an untimely filed Proof of Claim by a

secured creditor "forfeits the secured status in pursuit of a Motion for Relief of Automatic

Stay," the Court in In re Montgomery, 39 B.R. 541 (1984), citing *In re Rubuelta,* further

emphasized the forfeiture of rights of secured creditors for not following the rules:

> In *Rebuelta, supra,* the Court found that the holder of a secured claim who has not
> filed a timely proof of claim may not seek relief from the automatic stay:
> This Court agrees with the conclusion that the lien of a secured creditor that is
> being treated as an unsecured creditor does survive the Chapter 13 proceeding.
> However, the survival of this lien does not require adequate protection of said lien
> during the Chapter 13 proceeding ... In the instant case, C & S filed
> its proof of claim sixteen (16) months after the § 341 Meeting held in this case. To
> hold that the phrase "for purposes of distribution" contained in Bankruptcy Rule
> 13–302(e)(1) does not encompass the benefits associated with distribution in
> a Chapter 13 case, such as rights to adequate protection and relief from the stay,
> would effectively make Rule 13–302(e)(1) a nullity in those cases where there is
> depreciating collateral. Furthermore, secured creditors have an obligation to
> proceed timely to enable a Bankruptcy Court to determine whether a plan is
> feasible and otherwise comports with the requirements of Chapter 13 in order to
> be a confirmable plan.
> The above result is not unduly harsh. Creditors have notice of the consequences of
> the failure to file a timely Proof of Claim concerning their ability to seek adequate
> protection or relief from the automatic stay. The 14th edition of *Collier* clearly sets
> forth the fact that the holder of a secured claim who has not filed a timely Proof of
> Claim is not eligible to seek relief from the automatic stay. See 15 *Collier on*

*Bankruptcy* ¶¶ 13–401.06, p. 13–401–14; 401.07, p. 13–401–15; and 302.08[1], fn. 9, p. 13–302–16. (14th ed.)

27 B.R. 139.[6]

This Court is requested to accept the conclusion that the lien of a secured creditor that is being treated as an unsecured creditor survives the Chapter 13 proceeding. However, the survival of this lien does not require adequate protection of said lien during the Chapter 13 proceeding.

Rule 3002 is binding on the issue of when secured claims had to be filed in the case. Because the movant failed, pre-confirmation, to file a timely proof of claim in accordance with Rule, the movant forfeited its secured status and may not seek relief from the automatic stay.

The deadline for filing a proof of claim in Federal Rule of Bankruptcy Procedure 3002(c) applies to *all* claims, including those of secured creditors. Because the movant did not file a proof of claim before the Rule 3002(c) deadline, the bankruptcy court should rule it has also forfeited its right to seek a Motion for Relief from the automatic stay.

**WHEREFORE**, given the debtor's Supplemental Memorandum of Law, the debtor prays this honorable Court:

A. Grant Motion to Strike Alleged Secured Creditor Capital Ventures International, Inc.'s Motion for Relief from Automatic Stay as to Real Property at 1596 Salerno Circle, Weston, Fl 33327; and

B. Deem the alleged Security Creditor lacks standing to file a Motion for Relief due to its failure to prove ownership of the mortgage note; and

---

[6] At a prior hearing this Court appeared dismissive of the Collier quote however, there has been no refutation nor other statement in contravention of the quote from this edition.

**C.** Deem, if allowed, the Alleged Secured Creditor's claim to be treated as

an unsecured creditor; and

**D.** for any other relief deemed necessary and proper.

September 8, 2019                          */s/ William C. Johnson, Jr.*
                                          William C. Johnson, Jr. #470314
                                          6305 Ivy Lane
                                          Suite 630
                                          Greenbelt, Maryland 20770
                                          (202) 525-2958

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 8, 2019 a copy of the foregoing has been sent

via first class mail, postage pre-paid, to the following:

Office of the U.S. Trustee
1725 Duke Street
Suite 630
Alexandria, VA 22314

Gregory Mullen, Esq.
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202

All creditors on Mailing Matrix

September 8, 2019                          */s/ William C. Johnson, Jr.*
                                          William C. Johnson, Jr.

10

Case 1:19-cv-02997-ABJ   Document 1   Filed 10/07/19   Page 85 of 93
Case 19-00195-SMT   Doc 74-1   Filed 09/08/19   Entered 09/08/19 19:51:33   Desc
Notice of Opportunity to Object    Page 1 of 3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | |
| JEANNIE QUINTEROS, | ) | Case No.:    19-00195 SMT |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| Capital Ventures International, Inc. | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Jeannie Quinteros, | ) | |
| Respondent/Debtor, | ) | |
| | ) | |
| Ronnie Quinteros, | ) | |
| Respondent/Co-Debtor, | ) | |
| And | ) | |
| | ) | |
| Nancy Spencer-Grigsby, | ) | |
| Chapter 13 Trustee. | ) | |
| | ) | |
| _____ | ) | |

## NOTICE OF OPPORTUNITY TO OBJECT TO MOTION TO STRIKE ALLEGED SECURED CREDITOR CAPITAL VENTURES INTERNATIONAL, INC'S MOTION FOR RELIEF AS TO REAL PROPERTY AT 1596 SALERMO CIRCLE, WESTON, FL 33327

The Debtor Jeannie Quinteros has filed a Motion to Strike Alleged Secured Creditor Capital Ventures International, Inc.'s Motion for Relief from Automatic Stay as to Real Property at 1596 Salerno Circle, Weston, Fl 33327

<u>Your rights may be affected</u>.  You should read these papers carefully and discuss them with your attorney, if you have on in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)  If you do not want the Court to approve the application, or if you want the Court to consider your views on the matter, then:

on or before **seventeen (17) days** after the date of filling of this application, you or your attorney must file with the Court a written objection to the application, together with the

1

Case 1:19-cv-02997-ABJ   Document 1   Filed 10/07/19   Page 86 of 93
Case 19-00195-SMT   Doc 74-1   Filed 09/08/19   Entered 09/08/19 19:51:33   Desc
Notice of Opportunity to Object   Page 2 of 3

proposed order required by Local Bankruptcy Rule 9072-1. The objection and proposed order must be filed with the Clerk of the Bankruptcy Court, United States District Court for the District of Columbia, 333 Constitution Ave., NW, Washington, D.C. 20001. You may append affidavits and documents in support of your objection.

If you mail your objection to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above.

You must also mail a copy of your objection:

William C. Johnson, Jr.
Law Office of William Johnson
1310 L St. NW
Suite 750
Washington, D.C. 20005

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion and may enter an order approving the application. A hearing has been scheduled to occur September 26, 2019 at 2:00 pm, 333 Constitution Ave., NW, Washington, D.C. 20001 in Courtroom 1 before the Honorable Judge S. M. Teel. The Court may approve the application without a hearing if the objection filed states inadequate grounds for denial of the application. Parties in interest with questions may contact the undersigned.

September 8, 2019

/s/ *William C. Johnson, Jr.*
William C. Johnson, Jr., Esq.
Fed Bar No. 470314
1310 L St. NW, Suite 750
Washington, D.C. 20005
(202) 525-2958
Fax (301) 288-7473

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day of September 8, 2019 a copy of the foregoing was sent via first class mail, postage pre-paid to the following:

Office of the U.S. Trustee
1725 Duke Street
Suite 630
Alexandria, VA 22314

Gregory Mullen, Esq.
Tydings & Rosenberg LLP

2

Case 1:19-cv-02997-ABJ   Document 1   Filed 10/07/19   Page 87 of 93
Case 19-00195-SMT   Doc 74-1   Filed 09/08/19   Entered 09/08/19 19:51:33   Desc
Notice of Opportunity to Object   Page 3 of 3

One East Pratt Street, Suite 901
Baltimore, Maryland 21202

All creditors on Mailing Matrix

September 8, 2019                          /s/ *William C. Johnson, Jr.*
                                           William C. Johnson, Jr., Esq.

3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | |
|     JEANNIE QUINTEROS, | ) | Case No.:    19-00195 SMT |
| | ) | Chapter 13 |
|     Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| Capital Ventures International, Inc. | ) | |
|     Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Jeannie Quinteros, | ) | |
|     Respondent/Debtor, | ) | |
| | ) | |
| Ronnie Quinteros, | ) | |
|     Respondent/Co-Debtor, | ) | |
| And | ) | |
| | ) | |
| Nancy Spencer-Grigsby, | ) | |
|     Chapter 13 Trustee. | ) | |
| | ) | |
| _____ | ) | |

## ORDER-MOTION TO STRIKE ALLEGED SECURED CREDITOR CAPITAL VENTURES INTERNATIONAL, INC'S MOTION FOR RELIEF AS TO REAL PROPERTY AT 1596 SALERMO CIRCLE, WESTON, FL 33327

1

**UPON CONSIDERATION** of the debtor Jeannie Quinteros Motion to Strike Alleged Secured Creditor Capital Ventures International, Inc.'s Motion for Relief from Automatic Stay as to Real Property at 1596 Salerno Circle, Weston, Fl 33327, and any opposition thereto, it is hereby

ORDERED, the Motion to Strike Alleged Secured Creditor Capital Ventures International, Inc.'s Motion for Relief from Automatic Stay as to Real Property at 1596 Salerno Circle, Weston, Fl 33327 is GRANTED; and it is,

FURTHER ORDERED, the Alleged Security Creditor lacks standing to file a Motion for Relief due to its failure to prove ownership of the mortgage note; and it is,

FURTHER ORDERED, the Alleged Secured Creditor's claim is to be treated as an unsecured creditor.

Cc:

William C. Johnson, Jr., Esq.
6305 Ivy Lane
Suite 630
Greenbelt, Maryland 20770

Office of the U.S. Trustee
1725 Duke Street
Suite 630
Alexandria, VA 22314

Gregory Mullen, Esq.
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202

All creditors on Mailing Matrix

End of Order

2



*S. Martin Teel Jr.*

S. Martin Teel, Jr.
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: JEANNIE QUINTEROS, Debtor. | * * * | Case No. 19-00195-SMT Chapter 13 |
| * * * * * * * | * | * * * * * |
| CAPITAL VENTURES INTERNATIONAL, LLC Movant, | * * * | |
| v. | * * | |
| JEANNIE QUINTEROS, Respondent/Debtor, | * * * | |
| RONNIE QUINTEROS, Respondent/Co-Debtor, | * * | |
| And | * | |
| NANCY SPENCE GRIGSBY, Trustee | * * | |
| * * * * * * * | * | * * * * * |

## ORDER GRANTING RELIEF FROM AUTOMATIC STAY AS TO
## REAL PROPERTY AT 1596 SALERNO CIRCLE, WESTON, FL 33327

Upon review of the Motion for Relief from Automatic Stay and Co-Debtor Stay (the "Motion") filed by Capital Ventures International, LLC (the "Movant"), and pursuant to the court's oral decision of October 1, 2019, it is

**ORDERED**, that the Motion is **GRANTED**; and it is further

1

#3321559v.1

**ORDERED**, that the Automatic Stays imposed by 11 U.S.C. §362(a) and §1301(a) are **TERMINATED** to enable Movant, and/or its successors and assigns, to cause the commencement or continuation of a foreclosure proceeding, and/or pursuant other means, as permitted by applicable state law, of obtaining or transferring title to the real property belonging to the Debtor and commonly known as 1596 Salerno Circle, Weston, Florida 33327 (the "Property"), and to allow the purchaser or transferee to obtain possession same; and it is further

**ORDERED**, that the Automatic Stay of 11 U.S.C. §362(a) shall not be reimposed as to the Debtor's interest in the Property by the conversion of this case to a case under another Chapter of the United States Bankruptcy Code.

CC:
Movant
Trustee
Debtor's Counsel
Debtor

**END OF ORDER**

#3321559v.1

Signed: October 1 2019



_S. Martin Teel Jr._

S. Martin Teel, Jr.
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

IN RE:                                    )
    JEANNIE QUINTEROS,            )        Case No.:    19-00195 SMT
                                  )        Chapter 13
    Debtor.                        )
                                  )
                                  )
_____)
                                  )
Capital Ventures International, Inc.      )
        Movant,                )
                                  )
v.                                        )
                                  )
Jeannie Quinteros,                        )
        Respondent/Debtor,     )
                                  )
Ronnie Quinteros,                         )
        Respondent/Co-Debtor,  )
And                                       )
                                  )
Nancy Spencer-Grigsby,                    )
        Chapter 13 Trustee.    )
                                  )
_____)

## ORDER DENYING MOTION TO STRIKE ALLEGED SECURED CREDITOR CAPITAL VENTURES INTERNATIONAL, INC'S MOTION FOR RELIEF AS TO REAL PROPERTY AT 1596 SALERNO CIRCLE, WESTON, FL 33327

**UPON CONSIDERATION** of the debtor Jeannie Quinteros Motion to Strike Alleged Secured Creditor Capital Ventures International, Inc.'s Motion for Relief from Automatic Stay as to Real Property at 1596 Salerno Circle, Weston, Fl 33327, and any opposition thereto, it is hereby

ORDERED, the Motion to Strike Alleged Secured Creditor Capital Ventures International, Inc.'s Motion for Relief from Automatic Stay as to Real Property at 1596 Salerno Circle, Weston, Fl 33327 is DENIED.

Cc: E-Recipients

End of Order