## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE JEANNIE QUINTEROS, | ) |
| Debtor. | ) Bankruptcy No. 19-195 (SMT) |
| JEANNIE QUINTEROS, | ) |
| Appellant, | ) |
| v. | ) Civil Action No. 20-2884 (ABJ) |
| CAPITAL VENTURES INTERNATIONAL, LLC, *et al.*, | ) |
| Appellees. | ) |
| JEANNIE QUINTEROS, | ) |
| Appellant, | ) |
| v. | ) Civil Action No. 19-2997 (ABJ) |
| CAPITAL VENTURES INTERNATIONAL, LLC, | ) |
| Appellee. | ) |

## <u>MEMORANDUM OPINION</u>

Appellant Jeannie Quinteros has appealed several decisions issued by the United States

Bankruptcy Court for the District of Columbia in proceedings arising out of *In re Jeannie*

1

*Quinteros*, No. 19-br-195, a Chapter 7 bankruptcy proceeding in which Quinteros was the debtor. Notice of Appeal [20-2884 Dkt. # 1]; *see also* Notice of Appeal [19-2997 Dkt. # 1].[1]

Both of the matters pending before the Court relate to a piece of property owned by appellant Jeannie Quinteros: 1596 Salerno Circle in Weston, Florida. The property was the subject of a note executed by the debtor's ex-husband, Ronnie Quinteros, in 2006, which was secured by a mortgage on the property signed by both Jeannie and Ronnie. After a number of assignments to be discussed in more detail below, Capital Ventures came to be the holder of the Note.

In 2016, Capital Ventures filed a foreclosure action in state court in Florida. That action was automatically stayed when Quinteros informed the court on the day of the trial that she had filed for bankruptcy in the District of Columbia on March 27, 2019. [19-br-195 Dkt. # 1].

On July 19, 2019, Capital Ventures filed a motion with the bankruptcy court for relief from the automatic stay. [19-br-195 Dkt. # 54]. On October 2, 2019, the bankruptcy court granted the motion, [19-br-195 Dkt. # 87], and on November 8, 2019, it denied Quinteros's request to stay the October 2 order pending her appeal to this Court. *See* Mem. Decision and Order Denying Mot. to Stay Pending Appeal [19-br-195 Dkt. # 128] ("Bankr. Stay Order").

Meanwhile, on May 3, 2019, Quinteros filed a related Debtor's Adversary Proceeding Complaint, *Quinteros v. Capital Ventures International, LLC*, No. 19-10013, against Capital Ventures International, LLC; Nicholas Lampariello; National Home Investors, LLC; National Home Investment, LLC; Madison Management Services, LLC; and CitiMortgage, Inc., seeking to

---

1       Citations to the record in case numbers 19-2997 and 20-2884, the two cases before this Court, will include both the case number and the docket number, *e.g.*, [19-2997 Dkt. # 1]; [20-2884 Dkt. # 1]. The record on appeal includes the bankruptcy court docket. Citations to the record before the bankruptcy court will also include that case number, *e.g.*, [19-br-195 Dkt. # 2]; [19-10013 Dkt. # 1].

challenge the validity of the Capital Ventures' lien against the property.  Bankruptcy Appeal Record [20-2884 Dkt. # 2] ("BAR") at 29;[2] [19-10013 Dkt. # 1].  The initial complaint was dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on October 22, 2019, but "because the plaintiff [came] close to stating a claim entitling her to relief, the court [gave] the plaintiff 21 days to amend her complaint."  BAR at 200; [19-10013 Dkt. # 56].  In response to this invitation, appellant filed an Amended Complaint.  BAR at 205; [19-10013 Dkt. # 64].  However, on September 29, 2020, the bankruptcy judge again dismissed the complaint for failure to state a claim upon which relief can be granted and also found in the alternative that defendants were entitled to summary judgment.  *See* BAR at 519–86; [19-10013 Dkt. ## 84, 85, 86, and 87]; *see also* Judgment, BAR at 586–87.

Civil action number 19-cv-2997 before this Court is an interlocutory appeal of the bankruptcy court's October 2019 grant of Capital Ventures' motion for relief from the stay and its denial of appellant's motion to strike the Capital Ventures motion.  Notice of Appeal [19-2997 Dkt. # 1] at 3; *see also* [19-br-195 Dkt. ## 87, 89].[3]  That appeal is fully briefed and ripe for decision.[4]  Quinteros has also filed a motion in that case asking the Court to take judicial notice of a series of documents in further support of her Reply Brief.  [19-2997 Dkt. # 24].

---

2    Page numbers in all docket citations refer to the page number at the top of the PDF when available, not the page number on the actual document.

3    While that appeal was pending, appellant filed an emergency motion to stay the bankruptcy court's decision to relieve Capital Ventures from the automatic stay.  [19-2997 Dkt. # 6]. That motion was denied.  *See* January 3, 2020 Order [19-2997 Dkt. # 14].

4    *See* Appellant's 19-2997 Br. [19-2997 Dkt. # 16]; Appellee's 19-2997 Br. [19-2997 Dkt. # 21]; Appellant's 19-2997 Reply Br. [19-2997 Dkt. # 23].

In civil action number 20-2884, Quinteros is appealing the bankruptcy court's September 29, 2020 ruling in favor of defendants with respect to the Debtor's Adversary Proceeding Complaint.  Notice of Appeal [20-2884 Dkt. # 1] at 3; *see also* [19-10013 Dkt. ## 84, 85, 86, 87]. Also pending in that action is Quinteros's motion requesting a stay of the bankruptcy court's judgment pending appeal, [20-2884 Dkt. # 5], and a motion asking the Court to take judicial notice of a deposition of one of the defendants, Nicholas Lampariello, in a Florida state court proceeding related to the same property.  [20-2884 Dkt. # 23].  Appellees have responded,[5] appellant filed an individual reply to each appellees' submission,[6] and appellant has filed a supplemental brief, as well.  *See* Suppl. to Appellant's Opening Br. [20-2884 Dkt. # 17] ("Appellant 20-2884 Suppl.").

In her statement of issues on appeal in civil action 20-2884, Quinteros identifies five questions to be decided:

1. Whether the Bankruptcy Court committed clear error when the court entered a final order dismissing Appellant's non-core adversary proceeding complaint with prejudice; when the Bankruptcy Court lacked subject matter jurisdiction to enter judgment with prejudice against Appellant without first submitting proposed findings of facts and conclusions of law to the District Court, pursuant to 28 U.S.C § 157 (5)(C )(1).

2. Whether the Bankruptcy Court committed substantial prejudicial and reversible error or clear error, when it acted as State Appellate Court by reversing and/or ignoring the Judgment of the State Court which dismissed with prejudice, the case that was brought against the Appellant by the Appellee and its privies.

---

5      *See* Initial Br. of Appellee Madison Management Services, LLC [20-2884 Dkt. # 18] ("Madison Br."); Br. of Appellee CitiMortgage, Inc. [20-2884 Dkt. # 19] ("CitiMortgage Br."); Br. of Appellees, National Home Investors LLC, Capital Ventures International, LLC, and Nicholas Lampariello [20-2884 Dkt. # 20] ("CV Br.").

6      *See* Appellant's Reply to Madison Br. [20-2884 Dkt. # 22]; Appellant's Reply to CitiMortgage Br. [20-2884 Dkt. # 21]; Appellant's Reply to CV Br. [20-2884 Dkt. # 26].

3. Whether the Bankruptcy Court committed substantial prejudicial and reversible error when the Court stated the Affidavit of Lost Note plainly establishes that Capital Ventures meets the requirements of Florida statute § 673.3091 (1).

4. Whether the Bankruptcy Court committed substantial prejudicial and reversible error or clear error, when it accepted a loan modification that was procured by fraud as basis to grant standing to an alleged creditor that is not the real party in interest.

5. Whether the Bankruptcy Court committed substantial prejudicial and reversible error or clear error, when it denied Appellant her right to due process to conduct discovery, and when there were genuine material issues of fact that precluded the granting of Appellees' Motion for summary judgment.

Appellant's Opening Br. with Appendix [20-2884 Dkt. # 15] ("Appellant 20-2884 Br.") at 14–15.

Plaintiff raises a substantially similar set of issues in her appeal of the bankruptcy court's order relieving Capital Ventures of the automatic stay in case number 19-2997:

1. Did the Bankruptcy Court commit substantial prejudicial and reversible error or clear error, when it accepted a loan modification that was procured by fraud as basis to grant standing to an alleged creditor that is not the Real Party Interest?

2. Did the Bankruptcy Court commit substantial prejudicial and reversible error or clear error, when it acted as the State Appellate Court by reversing and/or ignoring the Judgement of the State Court which dismissed with prejudice, the case that was brought against the Appellant by the Appellee and its privies?

3. Did the Bankruptcy Court commit substantial prejudicial and reversible error or clear error, when it concluded that the alleged Creditor Capital Ventures International, LLC, who is not a Real Party In Interest did not have to file proof of claim yet, granted the non-creditor relief from stay to foreclose on Appellant's real property?

4. Did the Bankruptcy Court commit substantial prejudicial and reversible error or clear error when it granted alleged Creditor Capital Ventures International, LLC's Motion of Automatic Stay when it determined that the Debtor's entry of settlement agreement, that was procured by fraud, relieved the alleged creditor from complying with Florida Law regarding the entitlement and rights to enforce a lost note

5

which was never in possession of Capital Ventures International, LLC or its privies?

5.  Did the Bankruptcy Court commit substantial prejudicial and reversible error or clear error when it denied the Debtor's Motion to Strike the Motion for Relief from Automatic Stay after finding the creditor failed to file a Proof of Claim?

Appellant's Opening Br. with Appendix [19-2997 Dkt. # 16] ("Appellant 19-2997 Br.") at 15–16.

For the reasons set forth below, the bankruptcy court's rulings will be **AFFIRMED** in both cases.  This renders the motion to stay in case number 20-2884 moot, and the motion to take judicial notice in that case will be **DENIED**.  The motion in case number 19-2997 to take judicial notice of records related to the case will be **GRANTED**.

## FACTUAL BACKGROUND

The following facts were found by the bankruptcy court.[7]  Jeannie Quinteros has an ownership interest in real property located in Weston, Florida.  BAR at 520.  Appellant, along with her then-husband Ronnie,[8] financed the purchase by obtaining a loan from CitiMortgage, Inc.,

---

7   The bankruptcy court wrote separate opinions addressing each of the motions to dismiss filed by various defendants, but the opinions were all published on the same date, and the opinion granting Capital Ventures' motion to dismiss contains the bulk of the bankruptcy judge's fact-finding and reasoning.  This opinion will summarize the facts as the bankruptcy court found them in the opinion addressing Capital Ventures [19-10013 Dkt. # 84], unless otherwise noted.

Additionally, though appellant states at one point that "[t]here are no disputed issues of fact in this case," Appellant 20-2884 Br. at 22, some of the issues she describes as "pure[] questions of law" include challenges to the fact-finding of the bankruptcy court.  *Id.*  The Court will note any challenges to the bankruptcy court's factual findings in its analysis of those individual issues.

8   The bankruptcy court noted that, when Jeannie and Ronnie Quinteros divorced in 2009, their marriage Settlement Agreement stated Ronnie would quitclaim the property to appellant within ten days of the final dissolution of marriage.  BAR at 526.  Ronnie did not do so, and appellant asserted in the bankruptcy proceedings that she was a one-half owner of the property instead of the sole owner.  BAR at 526.  The difference appears to have no bearing on the disposition of this case.

which was secured by the property.  BAR at 520.  The mortgage then underwent four assignments,

which were described by the bankruptcy court as follows:

> Assignment 1:  This first Assignment of Mortgage was executed on June 24, 2011, wherein Mortgage Electronic Systems, Inc. ("MERS"), as nominee for CitiMortgage, Inc., its successors and assigns, assigned the Mortgage to Castle Peak 20101 Loan Trust, whose address was c/o Acqura Loan Services.  This first Assignment of Mortgage was recorded on July 12, 2011.

> Assignment 2:  This second Assignment of Mortgage was executed on August 10, 2011, wherein Castle Peak 2010-1 Loan Trust ("Castle Peak"), whose address was care of Acura Loan Services, assigned the Mortgage to U.S. Bank, National Association, as Trustee of Castle Peak 2010-1 Loan Trust.  This Assignment of Mortgage was not recorded, and it is readily inferred that U.S. Bank elected to treat this second Assignment of Mortgage as no longer effective, and did not seek to claim rights under the Note once the next Assignment of Mortgage was executed.

> Assignment 3:  This third Assignment of Mortgage was executed on June 26, 2013, wherein Castle Peak assigned the Mortgage to National Home Investors, LLC ("National Home Investors").   This Assignment of Mortgage was recorded on August 14, 2013.

> Assignment 4:  This fourth Assignment of Mortgage was executed on November 13, 2014, wherein National Home Investors assigned the Mortgage to Capital Ventures.  This Assignment of Mortgage was recorded on January 27, 2015.

BAR at 526–27; *see also* Bankr. Stay Order at 5–6; January 3, 2020 Order [19-2997 Dkt. #14] at

2–3.  The bankruptcy judge also detailed the history of the Note:

> [The Note] was endorsed in blank by CitiMortgage.  An Allonge executed by Castle Peak attached to the Note, provided with an Affidavit of Lost Note filed in the state court foreclosure proceeding brought by Capital Ventures, reflects that the Note was to be paid to the order of National Home Investors, and another Allonge, executed by National Home Investors, makes the Note payable to Capital Ventures.

BAR at 527 (emphasis omitted).

The opinion explains that, according to National Home Investors – the entity that sold the mortgage to Capital Ventures – the Note was lost by its attorney. BAR at 527–28. An employee of the law firm that was the last known holder of the Note "executed an Affidavit of Lost Note on October 6, 2014." BAR at 528 (emphasis omitted). The Affidavit "recit[es] that the Note was delivered to Kahane & Associates, P.A. by Acqura Loan Services on May 9, 2011. . . . The Affidavit of Lost Note then recites that the Note had then been lost sometime prior to October 6, 2014." BAR at 528.

There have been several foreclosure actions against the property. Relevant to this case, a foreclosure action was initiated by U.S. Bank in 2011.[9] BAR at 529. The parties settled that case and executed two agreements: a Loan Modification Agreement and a Settlement Agreement and Release. BAR at 529. The agreements called for the dismissal of the foreclosure action but preserved the rights of Capital Ventures under the Note. BAR at 529. The February 23, 2015 order[10] resolving the foreclosure case is part of the record on appeal, as it was attached as an exhibit to the complaint. It states:

> This matter is before the Court on the Plaintiff's Motion for Voluntary Dismissal and Discharge the Lis Pendens. . . .
>
> [It is] **ORDERED** and **ADJUDGED** THAT:
>
> 1. Plaintiff's Motion is hereby granted;

---

9       Though U.S. Bank initiated the case in 2011, National Home Investors was substituted as a party when it obtained the mortgage, and then Capital Ventures negotiated the settlement agreement after it obtained the mortgage. BAR at 529.

10      The order was slightly amended, *nunc pro tunc*, on March 3, 2019 to reflect that "[t]he subject List Pendens is in fact recorded in the County of Broward," rather than Miami-Dade County. BAR at 67.

2. The Notice of Lis Pendens recorded in Official Record Book 48381, Page 1489, of the Public Records of Broward County, Florida, is hereby discharged;

3. The parties shall comply with the terms and conditions set forth in the private settlement agreement, which is incorporated herein as if set out in full;

4. This court expressly retains jurisdiction over this action to enforce the terms of the settlement agreement; and

5. The action is hereby dismissed.

Nunc Pro Tunc Order Canceling Lis Pendens and Dismissing Case, BAR at 67; [19-10013 Dkt. # 2].

In 2016, Capital Ventures filed another foreclosure action. BAR at 530. That action was halted when appellant informed the state court on the day of trial that she had filed for bankruptcy in Washington, D.C. BAR at 530. Appellant then filed her Debtor's Adversary Proceeding Complaint, No. 19-10013, related to the status of the Florida property, and Capital Ventures moved in the bankruptcy court for relief of the automatic stay.

## STANDARD OF REVIEW

On appeal from a bankruptcy court,

> a district court may affirm, modify, or reverse a Bankruptcy Court's judgment, order, or decree, or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses.

*In re Johnson*, 236 B.R. 510, 518 (D.D.C. 1999), quoting Fed. R. Bankr. P. 8013.

"[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (internal

quotation marks omitted), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, (1948).  "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently."  *Anderson*, 470 U.S. at 573.

"[D]ecisions on questions of law are reviewable *de novo*."  *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge*, *LLC*, 138 S. Ct. 960, 965 (2018).  Because the bankruptcy court dismissed the case for failure to state a claim but also determined that, in the alternative, defendants were entitled to summary judgment, BAR at 539, both standards are implicated on review.

When reviewing a dismissal under Rule 12(b)(6) *de novo,* the guiding principle is that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678, citing *Twombly*, 550 U.S. at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*, quoting *Twombly*, 550 U.S. at 556.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555,

and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in plaintiff's favor, and it should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). Nevertheless, the Court need not accept inferences drawn by plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997). Because plaintiff is proceeding *pro se*, the Court notes that "[a] document filed *pro se* is 'to be liberally construed,'" and that "'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

As for summary judgment, Fed. R. Bankr. P. 7056 incorporates Fed. R. Civ. Proc. 56 into the bankruptcy context. Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the Court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

I.    **Appellant has waived any challenge to the bankruptcy judge's authority to rule on the motion to dismiss.**

The first issue raised on appeal in 20-2884 is whether the debtor's adversary proceeding, No. 19-10013, was a core proceeding for purposes of the Bankruptcy Act of 1978.  Appellant claims that it was not, and therefore, the bankruptcy judge lacked jurisdiction to rule on her claims and was instead required to submit findings of fact and conclusions of law to the District Court under 28 U.S.C § 157(5)(C)(1).

Section 157(5)(C)(1) provides:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.  In such proceeding, the

> bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(5)(C)(1).  Section 157(5)(B)(2) supplies a non-exhaustive list of potential core proceedings, including those involving "determinations of the validity, extent, or priority of liens." 28 U.S.C. § 157(5)(B)(2)(k).  Appellees argue that appellant's complaint challenging the lien on her Florida property should be considered a core proceeding under this provision.  *See, e.g.*, CV Br. at 12–13.

But the Court need not reach the merits of the question in this case, as appellant has waived any right to object to the bankruptcy judge's assumption of jurisdiction over her complaint.  In fact, appellant asked for it.  In the Jurisdiction and Venue section of the dismissed amended complaint at issue here, appellant stated: "[t]his Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157."  BAR at 206; [19-10013 Dkt. # 64]; *see also* BAR at 262 ("Plaintiff respectfully request that this Court immediately take jurisdiction of this matter and enter an Order granting temporary and permanent injunctive relief . . . .").

 "[F]orfeiture principles apply to new arguments raised for the first time on appeal."  *Shea v. Kerry*, 796 F.3d 42, 54 (D.C. Cir. 2015) (also taking into consideration whether appellant's "argument has been consistent throughout the litigation"); *see also Potter v. District of Columbia.*, 558 F.3d 542, 547 (D.C. Cir. 2009) ("[W]hile review of the grant of summary judgment is *de novo,* this court reviews only those arguments that were made in the district court, absent exceptional circumstances.").  This rule has particular force here since appellant affirmatively advanced the opposite position before the bankruptcy court.

Moreover, even if this proceeding were not a core proceeding, a bankruptcy court may enter final orders in non-core proceedings with the consent of the parties, and appellant expressed her consent when she asked for the immediate entry of an order in her prayer for relief.  BAR at 262; *see* Fed. R. Bankr. P. 7008 ("In an adversary proceeding before a bankruptcy court, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy court."); *see also Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 684–85 (2015) (allowing for "implied consent" "for adjudications by bankruptcy courts" so long as the consent is "knowing and voluntary.").[11]

Finally, even if this Court were to agree with appellant on the issues of waiver and consent, and it agreed that the amended complaint was not a core proceeding in the bankruptcy case, it would still have the power to affirm and enter the bankruptcy judge's order.  *See* Fed. R. Bankr. P. 8018.1 ("If, on appeal, a district court determines that the bankruptcy court did not have the power under Article III of the Constitution to enter the judgment, order, or decree appealed from, the district court may treat it as proposed findings of fact and conclusions of law.").  Pursuant to that rule, the Court would simply treat the order as a set of proposed findings of fact and conclusions of law, and the outcome, as explained in the rest of this opinion, would be the same.

For all of these reasons, the ruling dismissing the Debtor's Adversary Proceeding Complaint will not be overturned on the grounds that the bankruptcy court lacked jurisdiction to issue it.

---

11    Appellant contends on appeal that she did not consent to jurisdiction: "the issues raised by Appellant's adversary complaint were non-core proceedings and Appellant did not consent to the Bankruptcy Court making a final decision on the merits."  Appellant 20-2884 Br. at 24.  But this legal conclusion is not consistent with the face of the complaint.

**II.      In its rulings, the bankruptcy court did not reject or overturn a final decision by the Florida state court since the Florida court did not address the question of the lost Note on the merits.**

Appellant's second contention in 20-2884, the appeal of the dismissal of the Debtor's Adversary Proceeding, is that the bankruptcy court erred when it effectively "overruled" a state court in Florida and declined to defer to that court's decision regarding the lost Note.  This is the same as the second issue she raises in 19-2997, the appeal of the order relieving Capital Ventures of the automatic stay.

The Florida court decision appellant references is the dismissal of the foreclosure action initiated by U.S. Bank in 2011 on February 23, 2015.  Appellant 20-2884 Br. at 20; BAR at 67; [19-10013 Dkt. # 2]; Appellant 19-2997 Br. at 37–40.  Appellant claims that this order "dismissed the fraudulent claim of 'Lost Note,'" Appellant 20-2884 Br. at 28, and that revisiting that issue would violate the *Rooker-Feldman* doctrine, which "prevents lower federal courts from hearing cases that amount to the functional equivalent of an appeal from a state court."  *Gray v. Poole*, 275 F.3d 1113, 1119 (D.C. Cir. 2002); *see also D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings.").

The problem with this argument, as the bankruptcy judge noted, is that the Florida court did not decide the foreclosure case or any issue it presented on the merits, but it simply acknowledged the dismissal sought by the parties pursuant to their Settlement Agreement.  *See* BAR at 67, ¶¶ 1, 3 (dismissing the case on plaintiff's motion and specifying that "[t]he parties shall comply with the terms and conditions set forth in the private settlement agreement, which is incorporated herein as if set out in full"); *see also* BAR at 529 ("The case was dismissed upon the debtor's executing a Loan Modification Agreement and a Settlement Agreement and Release with

Capital Ventures, documents that called for the dismissal of the foreclosure action but preserved Capital Ventures' rights under the Note as modified by the Loan Modification Agreement."). While appellant asserts that the dismissal of the foreclosure action was "with prejudice," in the order at issue, the state court affirmed Capital Ventures' rights under the Note and retained jurisdiction to enforce the settlement agreement.  *See* BAR at 67, ¶ 4 ("This court expressly retains jurisdiction over this action to enforce the terms of the settlement agreement.").   Indeed, the agreement that called for the dismissal of the state action not only acknowledges, but is premised on, the legitimacy of Capital Ventures' standing to enforce the Note.[12]  *See generally* BAR at 404–07.

Thus, the order dismissing the 2011 foreclosure action does not have any preclusive effect under the *Rooker-Feldman* doctrine, as the dismissal was not based on a determination that the lost Note claim was flawed in any way, but it merely effected the resolution of the first foreclosure action pursuant to a private agreement between the parties.

### III.   The bankruptcy court did not err in enforcing the lost Note held by Capital Ventures.

Appellant argues in her appeal of the dismissal of the debtor's complaint that the bankruptcy court erred in determining that appellees were entitled to enforce a lost Note under Fla. Stat. § 673.3091(1).  Appellant 20-2884 Br. at 32.  This is the same as the fourth issue listed in the appeal of the order lifting the bankruptcy stay; appellant also contends in that matter that the bankruptcy court erred in failing to follow Florida law.  Appellant 19-2997 Br. at 42–45; October 2, 2019 Order Granting Mot. for Relief from Stay [19-br-195 Dkt. # 87] at 2 (enabling Capital

---

12      In other words, by incorporating "the private settlement agreement . . . as if set out in full," the Florida court was accepting the legitimacy of Capital Ventures' claim, not rejecting it.  BAR at 67.

Ventures to commence or continue the foreclosure proceeding against the property).   Appellant claims that the Florida courts already adjudicated this issue and ruled in her favor.   Appellant 20-2884 Br. at 33.   She also maintains that the "scintilla of evidence of a valid assignment, proof of purchase of the debt, or evidence of an effective transfer" proffered by the appellees below was insufficient under the applicable Florida statute to show that Capital Ventures had enforceable rights under the Note.   Appellant 20-2884 Br. at 35.

This Court has found above that the Florida court's February 23, 2015 dismissal of the first foreclosure action – which reaffirmed the right of Capital Ventures to enforce the Note in the future – did not constitute a ruling in appellant's favor with respect to the holder of the Note, and she did not point to any other state court decision that supposedly addressed the issue in this section of her brief.[13]   Thus, the Court cannot find on this record that the bankruptcy ruling is in conflict with any state court decision.

Appellant's contention that appellees failed to demonstrate "a valid assignment, proof of purchase of the debt, or evidence of an effective transfer," Appellant 20-2884 Br. at 35, does not warrant reversal either.   The Florida statute entitled "Enforcement of lost, destroyed, or stolen instrument" provides:

> (1) A person not in possession of an instrument is entitled to enforce the instrument if:

---

[13]     Appellant states in this section of her brief that the bankruptcy court "acted in contravention of the State Court order which decided the issues pertaining to the subject property on the merit[s] and with prejudice against Appellees and in favor of Ronnie Quinteros, the Title holder of said subject real property.   The issues pertaining to the real property was adjudicated on adequate and independent state grounds."   Appellant 20-2884 Br. at 35–36.   However, she does not identify the state court order by name or date or point to where it is located in the record.   Appellant's characterization of the decision, and her reference to Ronnie Quinteros, a named defendant in the first Capital Venture foreclosure action, suggest that she is invoking the same order dismissing the 2011 foreclosure action that was addressed in section II above.

      (a) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;

      (b) The loss of possession was not the result of a transfer by the person or a lawful seizure; and

      (c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(2) A person seeking enforcement of an instrument under subsection (1) must prove the terms of the instrument and the person's right to enforce the instrument.  If that proof is made, s. 673.3081 applies to the case as if the person seeking enforcement had produced the instrument.  The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument.  Adequate protection may be provided by any reasonable means.

Fla. Stat. § 673.3091.

The bankruptcy court determined that Capital Ventures met the requirements to enforce the Note for two reasons:  (1) "in a foreclosure action Capital Ventures could rely on the Settlement Agreement as establishing that it is the holder of the Note and thus has a right to seek foreclosure without the necessity of resorting to Fla. Stat. § 702.015 in order to sue," BAR at 560–61; and (2) Capital Ventures nonetheless did satisfy the requirements for proceeding to enforce a lost Note, because "the Affidavit of Lost Note plainly establishes that Capital Ventures meets the requirements of § 673.3091(1)."  BAR at 563 (emphasis removed).

Appellant asserts that this ruling was erroneous because "Capital Ventures was not a party to the initial Mortgage and note agreement with Country Wide Bank.  There is no Assignment

from Countrywide Bank to Capital Ventures as such, Capital Ventures has no pecuniary interest in the Note and Mortgage to the subject real property." Appellant 20-2884 Suppl. at 8.

However, the agreement and order resolving the first Florida foreclosure action expressly acknowledged that Capital Ventures was the holder of the Note secured by the property. As the bankruptcy court observed, "[t]he Settlement Agreement and Release establishes that Capital Ventures is the holder of the Note secured by the Mortgage, and there is no dispute that the Note was signed by Ronnie and that the Mortgage secures the Note." BAR at 561 (emphasis omitted); *see also* BAR at 404–07 (defining Capital Ventures as the "Lender," Jeannie Quinteros as the "Consumer," and stating that "Lender or its predecessor in interest made a loan . . . to Consumer . . . evidenced by that certain 'Promissory Note'/Adjustable Rate Note . . . dated November 2, 2006. The Note is secured by real and personal property collateral including, without limitation, a Mortgage . . . recorded November 14, 2006 . . . encumbering certain real property located at 1596 Salerno Circle, Weston, Florida 33327-1903."). The Loan Modification agreement itself is sufficient for purposes of Fla. Stat. § 673.3011(1), which provides that "[t]he term 'person entitled to enforce' an instrument means: (1) The holder of the instrument."

Appellant objects to that determination on the grounds that "[t]here is no Assignment of Mortgage and NOTE from Countrywide Bank to CitiMortgage . . . [or] to U.S. BANK, National Home Investors, nor Capital Ventures." Appellant 20-2884 Br. at 21 (emphasis in original).[14] But Capital Ventures is not seeking, and has never sought, to enforce a Note originally executed with Countrywide Bank. It is seeking to enforce a *different* Note, the one that was originally executed with CitiMortgage. The bankruptcy judge made that clear:

---

14     In case number 19-2997, appellant also insists that the significant lien holder is Countrywide. Appellant 19-2997 Br. at 41–42.

> The *Amended Complaint* inexplicably treats this Countrywide loan as the obligation sought to be enforced by Capital Ventures. However, Quinteros well knew that Capital Ventures was seeking to enforce anther obligation, the CitiMortgage *Note*. . . . That this is the obligation that Capital Ventures seeks to enforce was made evident as well by Quinteros's own exhibits received into evidence.

BAR at 522–23, citing "Capital Ventures' foreclosure action complaint, Case No. CACE-16-006184 in the Circuit Court for Broward County, Florida."

On appeal, appellant has failed to demonstrate why the bankruptcy judge's finding was incorrect or that the Countrywide Loan would be at all relevant. There is no need "to demonstrate that Countrywide Bank, the original lender and Holder of Debtor's 'Note' and 'Mortgage', endorsed or deliver[ed] the 'Note' and/or 'Mortgage' to subject real property to" defendants, Appellant 20-2884 Br. at 44, because there are two different notes. In sum, the record does not support a finding that the bankruptcy court was wrong to find that Capital Ventures had a legal right under the Florida statute to enforce the Note originally held by CitiMortgage.[15]

---

15      In the section of her brief on this issue, appellant also advances the arguments that the bankruptcy judge was retired at the time he ruled and that he was biased against her. It is true that the judge announced that he would retire in March of 2020 before he issued his September 29, 2020 ruling. Given the exigent circumstances facing the court in the spring of 2020, though, he continued to serve after March and to complete the matters assigned to him until his replacement was sworn in. *See* U.S. Bankruptcy Judge Vacancy Filled, United States Bankruptcy Court District of Columbia, https://www.dcb.uscourts.gov/news/us-bankruptcy-judge-vacancy-filled (Sept. 4, 2020). Also, he continues to serve the public as a recalled bankruptcy judge today. *See* Judge's Information, United States Bankruptcy Court District of Columbia, https://www.dcb.uscourts.gov/judges-information (last visited June 4, 2021). None of this undermined his authority to rule in appellant's case.

As for bias, appellant simply offers her conclusory opinion that the bankruptcy judge acted "[i]n furtherance of his invidious racism, bias, and prejudice," and complains about his unremarkable use of the pronoun "I" throughout the proceedings. Appellant 20-2884 Br. at 40–41. Appellant does not appear to have preserved this issue since she filed no motion to disqualify the judge, and such a motion would have failed in any event since appellant points to nothing other than her disappointment with the rulings in the case as a basis for her accusation. *See United States*

IV.    **The bankruptcy court did not err in rejecting the fraud in the inducement claim or in denying appellant's motion for discovery.**

Appellant's fourth contention in her appeal of the dismissal of her debtor's complaint is that "the purported loan modification was procured by fraud in the inducement."  Appellant 20-2884 Br. at 46.  This concern underlies her appeal of the order lifting the automatic stay as well. Appellant 19-2997 Br. at 18; Bankr. Stay Order at 18 ("The court addressed the debtor's contention that she had been fraudulently induced to sign the Settlement Agreement and Release by finding there was no evidence of fraud.").  She also complains in civil action 20-2884 that she was entitled "to conduct discovery on the fraudulent loan modification," and that the bankruptcy court improperly denied her request to do so.  Appellant 20-2884 Br. at 47.

The notion that the Capital Ventures loan modification was obtained by fraud rests on appellant's recurring assertion that "there was no existing contract or Loan to be modified." Appellant 20-2884 Br. at 48; Appellant 19-2997 Br. at 34–35. ("The Appellant does not owe any money to Appellee [Capital Ventures] under the loan modification. The loan modification is a sham and should be void because the owner of the property never endorsed the loan modification. Moreover, there was never any evidence of an existing loan agreement or contract that is subject to a loan modification with the Appellee or its privies. Also, there is no evidence the Citimortgage assigned or transferred the Mortgage or "Note" to Appellee or its privies.")  But the existence of the original CitiMortgage loan and its assignment to Capital Ventures are matters of public record,

---

*v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) (to be disqualifying, "[t]he alleged bias and prejudice . . . must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.").

*see* BAR at 526–27 (detailing the initial recording and each subsequent recorded assignment), and appellant has provided this Court with nothing more than conclusory allegations to rebut the bankruptcy judge's findings.[16]   In reviewing the bankruptcy court's decisions to grant relief from the stay, the bankruptcy judge reiterated that "the debtor [had] not provided evidence of fraud" concerning the Settlement Agreement and Release, Bankr. Stay Order at 27, which was executed along with the Loan Modification Agreement as part of the parties' settlement.  BAR at 529.

Appellant also argues in her appeal in 20-2884 that she should have been allowed to conduct discovery in order to support her fraud claim.  Appellant 20-2884 Br. at 46–47.  She first

---

16    Appellant submits that her "fact witness, William Pataalo . . . proffered irrefutable evidence of fraud," Appellant 20-2884 Br. at 43, and she attaches the declaration of a private investigator as an exhibit to her Supplemental Brief.  Decl. of William J. Paatalo [20-2884 Dkt. # 17-2].  In that document, Pataalo specifically acknowledges that he is not an expert in the law, but he offers an opinion as to whether various missing parties, inconsistencies, or anomalies render the assignment of the CitiMortgage Note to Castle Peak ineffective under the Uniform Commercial Code.  *Id.*

The bankruptcy judge appropriately determined that whether or not Capital Ventures held the Note "was a legal question, to which Paatalo could not testify as an expert, but allowed Paatalo to testify as to the facts he had gathered."  BAR at 531.  "In discussing those documents, his testimony wandered into his personal perceptions regarding the effects of those documents, perceptions that were mostly inadmissible speculation and impermissible opinion testimony, and that failed to cast any doubt on whether Capital Ventures is the holder of the Note."  BAR at 531. The bankruptcy judge also detailed his reasons for concluding that "[t]he documents upon which Paatalo relied do not establish that Capital Ventures is not entitled to enforce the Note and the Mortgage" at some length.  BAR at 531–33.

Appellant has attached the declaration, but she fails to identify any facts it contains that would undermine the bankruptcy judge's ruling; nor does she offer any legal grounds for why the investigator's legal opinions should have been considered below or warrant attention on appeal. Thus, appellant's conclusory statements are not sufficient to show that the bankruptcy judge's findings were clearly erroneous.  *Cf. Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way. . . . [A] a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace."), quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

requested discovery in December of 2019, after the defendants had already moved to dismiss the complaint.  BAR at 343; [19-10013 Dkt. # 70-2].

Appellant was not entitled to undertake discovery in order to respond to appellees' then-pending motions to dismiss, which were based on the face of the complaint.  *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.").  As courts in this district have repeatedly emphasized, "discovery typically occurs after the resolution of motions to dismiss," because "requiring defendants to comply with an order for expedited discovery when the case may later be dismissed for failure to state a claim could force the defendants to expend significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action." *Attkisson v. Holder*, 113 F. Supp. 3d 156, 165 (D.D.C. 2015) (brackets and internal quotation marks omitted).  For these reasons, the bankruptcy judge did not err in failing to permit plaintiff to embark on discovery before granting the motions to dismiss; appellant's claims were too vague, speculative, and conclusory at such an early stage of litigation to justify taking the unusual step of ordering discovery prior to a 12(b)(6) motion.  As appellee Capital Ventures notes, "the 'doors of discovery' are not unlocked for 'a plaintiff armed with nothing more than conclusions.'"  CV Br. at 16, quoting *Iqbal*, 556 U.S. at 678–79.

**V.     Appellant has not identified any genuine issues of material fact that precluded the grant of summary judgment in favor of the defendants.**

In her appeal of the bankruptcy court's order disposing of the debtor's complaint, appellant argues that there were genuine material issues of fact that precluded the granting of summary judgment in favor of Capital Ventures.  Appellant 20-2884 Br. at 50–51.  Appellant recites the

standard of review for summary judgment decisions, but she does not specify which of the thirteen facts she claimed were in dispute below should have prevented the bankruptcy judge from entering summary judgment in appellees' favor.

While the other appellees simply filed renewed motions to dismiss after plaintiff amended her complaint, Capital Ventures moved to dismiss the complaint and for summary judgment in the alternative.  *See* [19-10013 Dkt. # 68].  Appellant opposed that motion, and her opposition included a request for discovery.  BAR at 274; [19-10013 Dkt. # 70].  At that point, the bankruptcy court issued an order, noting that Quinteros was *pro se*, and instructing her as follows:

> [T]he plaintiff should heed the applicable rules regarding summary judgment, including Federal Rule of Civil Procedure 56 and Local Bankruptcy Rule 7056-1 (copies attached).  The debtor is warned that under LBR 7056-1, "[i]n determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.  The defendants' statement of material facts not in genuine dispute is included in the memorandum of law accompanying their Motion, Dkt. No. 68-2 at 4-7, and that is the statement of facts that must be controverted in order that the court may not assume under LBR 7056-1 that the stated facts are admitted.

BAR at 435; [19-10013 Dkt. # 79].  The bankruptcy judge observed that appellant appeared to be familiar with the summary judgement procedures, but he granted her an additional seventeen days to supplement her opposition in accordance with the rules he had highlighted, if she wished.  BAR at 436.  Appellant then supplemented her opposition with a statement of material facts in dispute.  BAR at 442–47; [19-10013 Dkt. # 83-1].  It included thirteen facts she maintained were in dispute, and most of them related to the issues already addressed in this opinion:  the lost Note and whether Capital Ventures had an enforceable interest in the property.  BAR at 443–47.

Thereafter, the bankruptcy court granted appellees' motions to dismiss – including the Capital Ventures motion – under Rule 12(b)(6) based on the insufficiency of the allegations in the

amended complaint.  *See, e.g.*, BAR at 539.  Since the complaint specifically referred to multiple documents and orders in the Florida state proceedings, it was appropriate for the bankruptcy court to consider those materials under Rule 12(b)(6).  However, the bankruptcy court also found, in the alternative, that Rule 56 had been satisfied.   In doing so, the bankruptcy judge specifically addressed each of the factual issues appellant raised in her statement in his detailed and thorough order.  *See* BAR at 541–57.

On appeal, Quinteros has failed to identify any genuine dispute of material fact that should have precluded the ruling against her.  She generally contests the conclusions the bankruptcy judge drew from the exhibits she presented, Appellant 20-2884 Br. at 43, but those objections relate to the lost Note, and they have already been found wanting for the reasons set forth above.  In her statement of material facts in dispute, appellant also included assertions about fraud by Lampariello, *e.g.*, BAR at 444, but the Court addressed any challenge to the bankruptcy court's rulings on that issue in section IV, above.

In its order, the bankruptcy court also rejected appellant's request for discovery because she had not satisfied the requirements of Fed. R. Civ. P. 56(d).  Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

The decision of whether to grant or deny discovery is within the trial court's discretion.  *See* Fed. R. Civ. P. 56(d) ("the court *may* . . . allow time . . . to take discovery") (emphasis added); *see also United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) ("Under the abuse of discretion standard that governs discovery disputes, a trial court's authority is at its zenith.").

The bankruptcy court stated, "Quinteros has not filed an affidavit or declaration attempting to articulate specified reasons why discovery is essential to justify her opposition."  BAR at 567. It also found that even if her opposition to the motion for summary judgment could be treated as an attempt to satisfy Rule 56(d), "it would fail because it does not state 'how the information [she] seeks would assist [her] in creating a genuine issue of material fact,' or connect the requested discovery to the substance of her claims."  BAR at 568, quoting *Jeffries v. Barr*, 965 F.3d 843, 856 (D.C. Cir. 2020).  Given appellant's failure to comply with Rule 56 and the vague nature of her request, the bankruptcy court did not commit error in denying the request for discovery in its discretion.

Since appellant has not shown that any factual finding was clearly erroneous or established that the bankruptcy court made any error of law, this Court will affirm the award of summary judgment to Capital Ventures.

## VI.     The motion for judicial notice in 20-2884 will be denied.

In addition to her appeal in 20-2884 – and supplemental submissions in support of the appeal – appellant file a motion styled as Appellant's Request for Judicial Notice.  [20-2884 Dkt. # 23] ("Mot. for Judicial Notice").  This motion asks the Court to take judicial notice of a deposition taken of one of the appellees, Nicholas Lampariello, the managing member of Capital

Ventures, in a proceeding before the County Court in Broward County, Florida. Ex. 1 to *id.*  None of the appellees responded to this motion.

The Court cannot take notice of the deposition for purposes of the appeal, as the deposition is not part of the record of the proceedings below.  *See generally* BAR.  Moreover, the deposition could not have been before the bankruptcy judge when he ruled as the deposition was taken on January 8, 2021, *see* Ex. 1 to Mot. for Judicial Notice, and the orders that are the subject of the appeal are dated September 29, 2020.  *See, e.g.*, BAR at 519.  For those reasons, the motion is **DENIED**; this ruling is not based on the Court's views of the significance of anything in the transcript, but rather on the fact that this deposition simply was not, and could not have been, before the bankruptcy court.

### VII.   It was not error for the bankruptcy court to relieve Capital Ventures from the automatic stay or to deny appellant's motion to strike the Capital Ventures pleading when Capital Ventures had not filed a proof of claim.

Additionally, appellant argues in her 19-2997 appeal that the bankruptcy court erred in granting Capital Ventures relief from the stay and denying her motion to strike without requiring Capital Ventures to file a proof of claim.

But as the bankruptcy judge pointed out, a creditor is not required to file a proof of claim in order to look to its lien to satisfy its claim.  *See In re Tarnow*, 749 F.2d 464, 465 (7th Cir. 1984) ("[T]he failure of the secured creditor to file a proof of claim is not a basis for avoiding the lien of the secured creditor.") (internal quotations omitted).  Although creditors must file a proof of claim under the Federal Rules of Bankruptcy Procedure to participate in receiving distributions under a plan, Federal Rule of Bankruptcy Procedure 3002 recognizes that failure of a creditor to file a proof of claim does not void a lien on the debtor's property securing the creditor's claim.  *Id.* at 466.  Further noted by the bankruptcy judge, nothing in 11 U.S.C. § 362(d), which governs relief

from stay in bankruptcy actions, requires a creditor to file proof of claim in order to obtain relief from automatic stay. *See In re Hogan*, 346 B.R. 715, 723 (N.D. Tex. 2006) (stating that a secured creditor can "opt to decline to file a proof of claim").

On appeal, Quinteros asserts no authority contrary to the bankruptcy judge's finding and fails to demonstrate why his finding was erroneous. In the absence of any statutory requirement that a creditor file a proof of claim to seek relief from an automatic stay, this Court will **AFFIRM** the bankruptcy judge's decisions to relieve Capital Ventures of the automatic stay and deny appellant's motion to strike the Capital Ventures pleading.

**VIII.   The motion for judicial notice in 19-2997 will be granted.**

As part of her 19-2997 appeal, appellant has also filed a motion to take judicial notice, [19-2997 Dkt. # 24], with several attachments. These attachments are: (1) the list of mortgage assignments and copies of those assignments; (2) the February 23, 2015 Florida court order that resolved the foreclosure case; and (3) the marital and property settlement agreement between Ronnie and Jeannie Quinteros. [19-2997 Dkt. # 24] at 11–26.

The list of mortgage assignments has already been noted by the Court and can be found within the Bankruptcy Appellate Record. BAR at 526–27. The Florida court order resolving the foreclosure case on February 23, 2015 has also already been noted by the Court and appears in the Bankruptcy Appellate Record. BAR at 67. The bankruptcy court previously noted that Jeannie and Ronnie Quinteros had a marriage settlement agreement upon their divorce, BAR at 526, and the Court has already stated that the agreement has no bearing on the disposition of this case. While none of these records alters the outcome of the case, the Court will **GRANT** the motion to make the documents part of the record in 19-2997 as well.

**CONCLUSION**

For all of the reasons set forth above, in Civil Action 20-2884, the bankruptcy court's judgment dismissing the amended complaint, and, in the alternative, granting summary judgment, is **AFFIRMED**, the motion for stay pending appeal is **DENIED** as moot, and the motion for judicial notice is **DENIED**.  In Civil Action 19-2997, the bankruptcy court's order granting relief from stay is also **AFFIRMED**, and the motion for judicial notice in that case is **GRANTED**.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  August 13, 2021